THE STATE OF OHIO, APPELLEE, *v.* CLARK, APPELLANT.

(No. 635—Decided April 28, 1952.)

*Mr. Herbert R. Freeman,* prosecuting attorney, for appellee.
*Messrs. Miller & Miller,* for appellant.

SAVORD, J.   This is an appeal on questions of law from a judgment of the Juvenile Court.

The complaint charged that the defendant "did act in a way tending to cause the delinquency" of an 11-year-old boy in that defendant "took indecent liberties with the boy." Defendant having entered a plea of not guilty and having waived in writing a trial by jury, was tried to the court, adjudged guilty, and ordered to stand committed to the Toledo workhouse for a period of one year and to pay the costs of prosecution.

It is from such judgment and sentence that defendant appeals, assigning as errors that the Juvenile Court erred:

(1) In overruling defendant's motion for a finding of not guilty at the close of the state's evidence and at the close of all the evidence.

(2) In that the decision and judgment of the court is contrary to law and the manifest weight of the evidence.

Among the several reasons advanced in support of his first assignment of error, defendant urges that the complaint upon which he was required to go to trial is

insufficient in that it fails to state an offense. The basis for such criticism resides in the claim that the complaint is indefinite in stating the particular conduct alleged to have been engaged in by defendant, which tended to cause the delinquency of the child; particularly in that such complaint neither specifies the exact nature of the "liberties" nor whether the taking of same was wilful. Concededly, the complaint might have been drafted so as to have rendered it more definite and certain as to content, but considering it in its entirety, we are satisfied that it was sufficient to apprise defendant of the nature and character of the offense charged. No motion or demurrer subjecting the complaint to attack was filed, nor did defendant request a bill of particulars. We are unable to conclude that the complaint is insufficient as a matter of law.

Defendant argues further that the record discloses no evidence to establish that the child actually became a delinquent as a result of any alleged conduct indulged in by the defendant. In advancing this proposition, it appears that defendant fails to accord proper significance to that portion of Section 1639-45, General Code, upon which this prosecution is based, and having to do with acts which tend to cause delinquency. The first portion of this section condemns the aiding, abetting, causing, encouraging or contributing towards the delinquency of a child. This portion of the statute undoubtedly contemplates an existing delinquency and that such situation has been contributed to by another in one or more of the several ways outlined by the statute. Hence, the rule that in such case the complaint is required to allege and the proof to establish that the minor is or was a delinquent and the situation was in some measure caused or contributed to by the one charged. *Peefer* v. *State,* 42 Ohio App., 276, 182 N. E., 117.

Reasonable construction of that portion of Section 1639-45, General Code, having to do with acts which in a way tend to cause delinquency in a child leads to an entirely different concept. Here it does not absolutely follow that the child must as a result of such acts become a delinquent. If the acts are of a nature and character that they possess within themselves the probability of leading the child into the status of a delinquent, as contemplated by Section 1639-2, General Code, then such acts fall within this portion of Section 1639-45, General Code, and may be considered as tending to cause delinquency independent of whether such delinquency actually develops. It is the vicious effect which such acts may probably produce that is sought to be avoided. The prohibition seeks to prevent a probable delinquency rather than to await the undesirable result and then seek its cure. Surely the Legislature never intended that the offender should be punished only in the event that the potential effects of such acts had been fully accomplished.

On the day here in question, the defendant came to Norwalk about noon. It is conceded that during the afternoon he drank excessively and, while there may exist some question as to whether he was intoxicated in such degree as to be totally lacking his faculties, there exists no question that he was under the influence of liquor. Late in the day he encountered the prosecuting witness in a downtown drug store. Having paid for a soft drink which the former had purchased, they left the drug store in each other's company, the boy indicating that he was about to return to his home. Defendant continued for a considerable distance along the street with the boy. He continued to inquire with respect to a former acquaintance and urged the boy to point out to him the place of residence of this friend. According to the prosecuting witness, as he reached the neighborhood of his home

and was passing between two houses defendant "put his hands on my privates."

On cross-examination, the boy testified as follows:

"Q. Did he at that time grab you with his other hand or hold you? A. He had me by the arm, he wasn't holding me tight; I only ran home but he went the other way.

"Q. Now when he touched your privates, Philip, did he use his right hand or his left hand, do you remember? A. No, I don't.

"Q. Do you remember feeling that touch? A. Yes.

"Q. You do? A. Yes.

"Q. Did it hurt? A. No.

"Q. It wasn't a hard blow? A. No, sir.

"Q. And I believe you told Mr. Freeman that he didn't do anything more than that? A. No.

"Q. Did—he did not open your fly? A. No.

"Q. Or grab for your penis? A. No.

"Q. Now you ran back through the houses, did you? A. Yes.

"Q. What was his condition? A. Well, he was intoxicated."

The record further discloses that upon the boy going into his house and reciting to his father what had happened, the latter called the police. The father, son, and officer responding to the call cruised about the neighborhood for a brief time in an effort to locate the defendant. Not having done so, they returned to the house. Defendant was standing in front of it and still inquiring as to the place of residence of his former friend, having apparently made no effort to leave the neighborhood. He submitted to arrest without any indication of resistance. On direct examination, the arresting officer testified that the defendant was intoxicated; that the latter said he was looking for Frankie Noble; and that upon being interrogated at

the police station, defendant was incoherent in his speech.

Defendant testified that on the day in question he had had a number of drinks prior to meeting the boy; that having struck up a friendship with the boy, defendant asked him to show defendant the residence of Frankie Noble, defendant's former friend; that it was for such purpose that the boy and himself started down the street together; and that when the boy suggested he was going home, defendant said to him: "It is early yet, will you show me where Frankie Noble lives first before you go home."

The further direct examination of defendant reveals the following questions and answers:

"Q. What did he say or do? A. Well, he acted hesitant and I grabbed his arm, then I says 'Before you go won't you show me where Frankie lives?' And he acted very excited.

"Q. What did he do? A. He got excited and he said 'I got to go now, I got to go, I got to go.'

"Q. What did he do? A. Why he told me I had to let him go. I told him I wouldn't harm him, I just wanted to see Frankie Noble and he got scared and more or less ran."

In our consideration of this case, we can not ignore the responsibility resting upon the court by reason of the unqualified expression found in the syllabus of *Cooper* v. *State*, 121 Ohio St., 562, 170 N. E., 355, wherein it is stated:

"It is the duty of the Court of Appeals, in reviewing a case upon the weight of the evidence, to determine whether the verdict and/or judgment is supported by the degree of proof which the character of the case requires, and render its judgment according to such determination."

To the same effect see *Ford* v. *Osborne*, 45 Ohio St., 1, 12 N. E., 526; *Cole* v. *McClure*, 88 Ohio St., 1, 102 N.

E., 264; *State* v. *Urbaytis,* 156 Ohio St., 271, 102 N. E. (2d), 248.

Although recognizing the imperative necessity of protecting the physical and moral welfare of minors as contemplated by the delinquency laws, we must be mindful of the serious results accruing to an individual improperly found guilty of their violation. In the light of the rule and considering the immaturity of the boy, the fact the defendant had been drinking, the uncontroverted original purpose of his accompanying the boy, the question of what defendant actually did, the insufficiency of proof as to the element of wilfulness, the fact that the defendant remained in the neighborhood of the boy's home, the testimony adduced as to the previous good character of the defendant and all the other facts and circumstances disclosed by the record, we can not say that we "feel an abiding conviction to a moral certainty of the truth of the charge" and that therefore the evidence attains that high degree of probative force and certainty which the law demands to support a conviction.

It follows that the judgment and sentence must be and is reversed, and the cause is remanded to the Juvenile Court with instructions to discharge the accused.

*Judgment reversed.*

Fess and Conn, JJ., concur.