THE STATE OF OHIO, APPELLEE, *v.* LIPPI, APPELLANT.

(No. 206—Decided March 30, 1962.)

*Mr. Charles E. Baldwin*, for appellee.
*Mr. C. B. Thornton*, for appellant.

YOUNGER, J.  The defendant in this case was charged by affidavit in the Municipal Court of Van Wert with the violation of Section 4511.251, Revised Code, on the 9th day of June 1961. This section, so far as pertinent to the charge here filed, is as follows:

"(A) Drag racing is defined as the operation of two or more vehicles from a point side by side at accelerating speeds

in a competitive attempt to out-distance each other * * *. The operation of two or more vehicles side by side either at speeds in excess of prima facie lawful speeds established * * * or rapidly accelerating from a common starting point to a speed in excess of such prima facie lawful speeds shall be prima facie evidence of drag racing."

The case was tried to the court without the intervention of a jury. The defendant was found guilty and the maximum sentence for such violation, a fine of $500 and imprisonment for six months, was imposed. From this finding of guilty this appeal arises.

The record discloses that a state highway patrolman, while traveling west on U. S. Route No. 30, a short distance west of the city of Van Wert, was following a car subsequently identified as that being driven by the defendant, and that the defendant passed a large truck and trailer at a speed which the patrolman felt was too fast. Whereupon, the patrolman passed the truck and followed the defendant a short distance west to Richey Road, where the defendant turned to his right, or north. The patrolman turned his car to the left, or south, at this intersection where the Dix Church is located and parked his car in the church yard, facing north, and put his headlights on dim. He testified that after traveling north a distance of about one hundred yards the defendant pulled his car up alongside another car which was parked there, and that they "started up, side by side, rapidly accelerating their speeds for a distance of at least two to three hundred yards, at which time one car went ahead of the other." He testified that he was not in a position to clock the speed of these cars, but that in his judgment they were each driving at a speed much in excess of 50 miles per hour, which would be in excess of the prima facie rate of speed during the night season, since it was then a little after 8:30 o'clock p. m. About a mile and a half north of the intersection of U. S. Route No. 30 and Richey Road is the Pennsylvania Railroad crossing, and it is admitted by all witnesses that this crossing on Richey Road is a steep incline, for which the cars traveling Richey Road must reduce their speed to from five to ten miles per hour. The patrolman testified that as these cars approached the railroad crossing they did reduce their speed to such a low speed, one following the other across the crossing. The defendant is

not charged with drag racing between U. S. Route No. 30 and the Pennsylvania crossing, the incident above described.

The patrolman testified that these cars continued in their proper lane north of the railroad crossing, but at a high rate of speed. He started to follow them but had some trouble crossing U. S. Route No. 30 because of the traffic conditions, and that he drove his patrol car north on Richey Road at a high rate of speed and had to slow down for the railroad crossing, and that he then continued at the high rate of speed. About a mile and a half north of the railroad crossing on Richey Road is the intersection of Convoy Road, and the patrolman testified that as these cars reached the intersection of Richey Road and Convoy Road they again lined up side by side and then "accelerated rapidly, side by side, for a distance of two to three hundred yards at speeds in excess of the prima facie lawful speed * * * after which one car pulled ahead of the other into his proper lane of traffic." He testified that he was then sufficiently close to both automobiles to obtain an accurate clock of their speeds and that he did clock them. It is significant that at no time did the patrolman state the speed at which he clocked the defendant. He testified further that, although both cars were traveling in a single line, each continued at a high rate of speed and he was unable to overtake them; that the two drivers continued on for a distance of two miles to a crossroad known as the Dixon-Cavette Road, where one of the drivers turned right and into a farm yard and the defendant turned left on the Dixon-Cavette Road, rapidly accelerating his car. He testified further that he did not turn on his siren or his red pursuit light on top of the cruiser until after the defendant turned left on the Dixon-Cavette Road.

The defendant is charged with drag racing on Richey Road between Convoy Road and the Dixon-Cavette Road.

On cross-examination the patrolman testified that he was not sufficiently close to both cars to clock their speed accurately until after the defendant and the other car finally pulled up side by side the second time at the intersection of Richey Road and Convoy Road; that he had his cruiser "to the floor" and was unable to catch up with the two cars until they stopped side by side at the Convoy Road intersection. He was then asked why he did not give them a signal that he was following them

and wanted them to stop and he testified that he was not in position to do so. There were no other witnesses on behalf of the state as far as this case is concerned. The defendant was charged with the subsequent offense of reckless driving after he turned left at Dixon-Cavette Road and the officer started in pursuit. The two charges against the defendant were combined for the purpose of trial and a much larger portion of the record concerns the charge of reckless driving.

The defendant assigns as error that the finding, opinion, judgment and sentence of the court are not sustained by sufficient evidence, and are contrary to law.

This is a criminal case. It is a very elementary and a fundamental principle of law that in a civil case a verdict is authorized when supported by a bare preponderance of the testimony, but in a criminal case a verdict of guilty is authorized only when the evidence produced establishes the guilt of the accused beyond a reasonable doubt. The degree of proof required in criminal cases is the same whether the case is tried to a jury or whether it is tried to a trial judge without the intervention of a jury. In other words, a verdict of a jury cannot be sustained unless the required degree of proof is shown. Likewise, a finding of guilty by a trial judge cannot be sustained unless it also is supported by evidence produced to the degree of proof required, the same as before a jury.

What then becomes the duty of this court when the matter is brought before it on appeal? In 3 Ohio Jurisprudence (2d), 820, Section 821, it is stated:

"Degree of proof required in criminal cases.—In determining whether a judgment in a criminal case is manifestly against the weight of the evidence, the reviewing court should take into consideration the degree of proof required in criminal cases. * * * a verdict in such criminal case may be manifestly against the evidence, although supported by a preponderance of the testimony, for the reason that more than a preponderance of the testimony is required to warrant a verdict of guilty.

"A verdict is not sustained by sufficient evidence, if, after weighing it, there exists a reasonable doubt as to the guilt of the accused * * *."

The Supreme Court of Ohio, in *Cooper* v. *State*, 121 Ohio St., 562, states in the syllabus:

"It is the duty of the Court of Appeals, in reviewing a case upon the weight of the evidence, to determine whether the verdict and/or judgment is supported by the degree of proof which the character of the case requires, and to render its judgment according to such determination."

In considering the case before us we are confronted with the same question which was before the Court of Appeals of the Sixth Appellate District in the case of *State* v. *Clark*, 92 Ohio App., 382, which was on appeal from a conviction in the trial court wherein the complaint charged that the defendant "did act in a way tending to cause the delinquency" of an eleven-year-old child. The court, in its opinion on page 387, said:

"In our consideration of this case, we can not ignore the responsibility resting upon the court by reason of the unqualified expression founded in the syllabus of *Cooper* v. *State*."

The syllabus in *Cooper* v. *State* has been quoted above, and paragraph four of the syllabus in *State* v. *Clark* is as follows:

"In reviewing a case on the weight of the evidence, the Court of Appeals must determine whether the evidence obtains that *high* degree of probative force and certainty which the law demands to support a conviction." (Emphasis added.)

It now becomes necessary to consider the evidence upon which the conviction of the defendant below rested. The only evidence against the defendant relating to the charge of drag racing is that of the patrolman and is as follows: "* * * accelerated rapidly, side by side, for two hundred to three hundred yards at speeds in excess of the prima facie lawful speed * * * after which one car pulled ahead of the other into his proper lane of traffic."

The first part of the statute defining drag racing is that "drag racing is defined as the operation of two or more vehicles from a point side by side at accelerating speeds in a competitive attempt to out-distance each other." There is no evidence in the record before us upon this point. However, the latter part of the statute provides that the operation of two or more vehicles side by side, either at speeds in excess of the established prima facie lawful speeds or rapidly accelerating from a common starting point to a speed in excess of such prima facie lawful speeds, shall be prima facie evidence of drag racing.

It will be noted that the testimony given by the patrolman

parrots the words of the statute as to what constitutes a prima facie case. Giving full import to his testimony, the best that can be said for it is that it does establish a prima facie case.

The conviction of the defendant cannot be sustained by proof of a prima facie case unless such proof is not challenged by contrary evidence. The defendant in this case offered evidence of himself and the driver of the other car specifically denying any act of drag racing. Their testimony was to the effect that the defendant was going out to visit his girl friend who lived on the farm at the intersection of Richey Road and Dixon-Corvette Road, where the driver of the other car turned into a farm yard and the defendant turned left. The driver of the other car wanted to find out from the defendant's girl friend what size sweater he should buy as a present for his girl friend. Both testified that as they turned north off U. S. Route No. 30 one signaled the other and they stopped, side by side and talked about the car which had been following the defendant and came to the conclusion that they were being followed purposely. They both testified that upon crossing Convoy Road one of them signaled the other and they stopped, side by side, and again discussed the fact that they were being followed, and from the lights of the car following them they decided this car was getting closer. The testimony definitely establishes that at the Convoy intersection the two cars were side by side, as the patrolman testified that from where he was he could see four tail lights in the road.

This evidence tends to overcome the evidence of a prima facie case given by the patrolman. Upon such evidence being introduced it became the duty of the trial court as the trier of the facts to decide in view of all of the testimony before him whether or not the state had established a case against the defendant by evidence to the degree required for a conviction in a criminal case.

Upon appeal the same question is before this court.

To sustain a conviction the evidence produced must be such as to establish the guilt of the accused beyond a reasonable doubt. The record in this case has been read and re-read several times and carefully considered, and we must conclude, as the Court of Appeals in State v. Clark, supra, did, at page 388, that upon consideration of all the testimony "and all the other

facts and circumstances disclosed by the record, we can not say that we 'feel an abiding conviction to a moral certainty of the truth of the charge' and that therefore the evidence attains that high degree of probative force and certainty which the law demands to support a conviction.''

In *State* v. *Clark,* and also in *State* v. *Miclau,* 104 Ohio App., 347, another case involving one of the questions here presented, that is, whether to reverse and remand or discharge, the judgment of conviction and sentence were reversed and the defendant discharged. The *Miclau case* was affirmed by the Supreme Court (167 Ohio St., 38).

It follows that the judgment and sentence must be, and hereby is, reversed and the cause is remanded to the Municipal Court of Van Wert with instructions to discharge the defendant.

*Judgment reversed.*

Middleton, J., concurs.

Guernsey, P. J., dissenting. I must disagree with my associates in the disposition of this cause.

According to the narrative bill of exceptions, which includes the sole evidence before the trial court and this court, the state patrolman testified with relation to the time and place of the offense charged ''* * * that the defendant and the operator of the other car stopped side by side at this intersection [Richey Road and Convoy Road], and after a few seconds both cars accelerated rapidly, side by side, for a distance of two to three hundred yards at speeds in excess of the prima facie lawful speed for the night season, to wit, at a speed in excess of fifty miles per hour, after which one car pulled ahead of the other car and into his proper lane of traffic. Patrolman Wood then testified that he was sufficiently close to both automobiles to obtain an accurate clock of their speeds at this time, and which clock he did so make * * *.'' In my opinion, this is positive testimony that he clocked both cars at a speed in excess of 50 miles per hour and does not constitute, as stated in the majority opinion, a significant failure to state the speed at which he clocked the defendant.

The patrolman's testimony tended to prove facts prescribed by the Legislature to be prima facie evidence of the facts constituting the crime of drag racing. (Section 4511.251, Revised Code.)

In the absence of explanation or contradiction by other competent evidence, proof of a crime by proof of facts constituting prima facie evidence thereof may withstand the test of proof beyond a reasonable doubt. However, to overcome a case made by prima facie evidence, the evidence in explanation or contradiction must be credible.

In the instant case, the explanation of their stopping side by side and the contradiction of their rapidly accelerating from a starting point to a speed in excess of prima facie lawful speed was supplied by the testimony of the defendant and his friend, the driver of the other car. Since such latter evidence was in exact contradiction to that of the state patrolman, it must be concluded that either the state patrolman could not be believed or the defendant and his friend could not be believed. Their respective credibility was, in the absence of a jury, wholly within the province and discretion of the trial court, and, had the trial court arrived at its conclusion that the testimony of the defendant and his friend could not be believed without error, the case made by the prima facie evidence would stand, and such case would likewise withstand the test of proof beyond a reasonable doubt.

However, the trial court stated in his opinion that *"from the evidence showing defendant's prior handling of an automobile, together with* his appearance and attitude in court, it is felt that any thinking jurist could come to but one conclusion: that is, in this case, to accept the state highway patrolman's word with reference to the drag racing." (Emphasis added.)

Defendant had testified, on cross-examination, that he had totally wrecked another automobile a year or so before trial, and in reply to questions by the court answered that "he didn't know what happened * * * that he didn't make a curve on the Walnut Street Road and just cracked up his Mercury." On redirect, he testified that he had never been "convicted or pleaded guilty to any offense as the result of this accident on Walnut street," and that a deputy sheriff had "investigated the accident, and advised the defendant that no charge would be made

against him.'' This constituted the entire testimony as to the circumstances of the wreck.

Although this testimony as to the wrecking of another car was admitted without objection, it was not in any manner relevant to the issues of this criminal case, and, upon objection, should have been excluded. Nevertheless the trial court concluded from this evidence:

"That only a short time ago, the defendant wrecked his automobile for no apparent reason, *other than just inattention to driving, or excessive speed.* The court, when hearing this testimony, felt that under the circumstances related, a reasonable and prudent driver would not have wrecked this car at this time. *The court finds from the evidence* that the defendant, if not a so-called hot rodder, certainly borders on same; that his reputation in the past has been one of being pretty much of a wise guy when operating a motor vehicle.'' (Emphasis added.)

In my opinion, there was no evidence as to the reason for the wreck, and none to justify the conclusions drawn by the court.

In any case, the evidence was not relevant to the issues and, having no probative value as to credibility, it should not have been considered in any way determinative of the credibility of defendant. As stated in 98 Corpus Juris Secundum, 324, Witnesses, Section 460, "it is not proper for the triers of fact to consider matters which, even if true, would not have any legitimate tendency to lessen the credibility of the witness.'' As it was so considered, the trial court abused its discretion, committed prejudicial error, and its conclusion that the defendant could not be believed cannot be accepted as conclusive. With such irrelevant evidence excluded from consideration the trial court might have arrived at a different, and opposite, conclusion as to defendant's credibility. And if a different conclusion as to defendant's credibility should be arrived at it would also, of necessity, result in a different conclusion as to the credibility of the state patrolman. If the state patrolman cannot be believed it would necessarily follow that there is no prima facie evidence, as provided by Section 4511.251, Revised Code, of the commission of the crime, and the case fails, not because of reasonable doubt, but because of complete failure of proof of the elements of the crime.

The conclusion of the majority of this court that the defendant should be discharged is consistent only with a determination by the majority that the state patrolman could not be believed and that the defendant, or his friend, could be believed, which determination is, of course, contrary to that of the trial court.

However, it is basic law that appellate courts, in an appeal on questions of law, have no authority to determine the credibility of witnesses, and to so determine constitutes reversible error. Credibility of witnesses is solely within the province of a jury, except when a case is tried without a jury, and it is then solely within the province of the trial court. As stated by the Supreme Court in the case of *In Re Lieberman*, 163 Ohio St., 35, at page 39:

"Whether there is sufficient evidence to sustain the finding of the trial court is a question of law. If the Court of Appeals had determined in this case that the finding was not sustained by sufficient evidence, it would have been justified in dismissing the charges. And in an appeal on questions of law, if there is sufficient evidence in the record to warrant the finding of the Court of Common Pleas, the Court of Appeals may nevertheless decide that such finding is against the weight of the evidence. In that event, the only power of the Court of Appeals is to order a new trial. *State* v. *Robinson*, 162 Ohio St., 486. But the Court of Appeals can not substitute its judgment as to what the evidence shows for that of a jury or a three-judge court. *State* v. *Robinson*, 161 Ohio St., 213, 118 N. E. (2d), 517; *Henry* v. *Henry*, 157 Ohio St., 319, 105 N. E. (2d), 406."

In the third paragraph of the syllabus of the *Lieberman case* the Supreme Court held:

"The determination of the credibility of such witnesses is for the trial court, and the Court of Appeals may not substitute its judgment as to such credibility for that of a three-judge trial court."

In determining whether evidence is *sufficient* to constitute proof beyond a reasonable doubt, Judge Robinson, in his opinion, in *Cooper* v. *State*, 121 Ohio St., 562, concurred in by five other members of the Supreme Court, and cited in the majority opinion, stated, at page 570:

"The instant case presents a situation where the Court of

Appeals was called upon to determine whether there was proof beyond a reasonable doubt, *if it believed all of the evidence of the state and disbelieved all of the evidence of the defense favorable to the defendant*; and, so considering it, that court was in doubt as to whether the element of deliberation and premeditation had been proven by the degree of proof required in criminal cases, and, *being in doubt, its duty was to reverse and remand.* * * *'' (Emphasis added.)

If there is no competent evidence of a particular element of a crime, then the evidence is insufficient for conviction and the defendant should be discharged, but if the evidence is in conflict the rule to be applied is that expressed in the eighth paragraph of the syllabus in *State, ex rel. Squire, Supt.,* v. *City of Cleveland,* 150 Ohio St., 303, which applies:

''Where the evidence in a case is conflicting or where reasonable minds might differ as to the inferences to be drawn therefrom, both the trial court and the Court of Appeals are authorized and required upon motion to weigh the evidence, but in such a situation the Court of Appeals on an appeal on questions of law cannot as a matter of law find the facts otherwise than as found by the trier of the facts. *In such a situation the sole function of the Court of Appeals is to weigh the evidence and either affirm the finding of the trier of the facts or, if such finding be against the weight of the evidence, set it aside and remand for a new trial.''* (Emphasis added.)

This rule is as applicable to criminal cases as it is to civil cases. See 3 Ohio Jurisprudence (2d), 829, Appellate Review, Section 823, and authorities there cited. See, also, *State* v. *Moreland,* 16 Ohio App., 515, particularly in point.

The author of this dissenting opinion does not agree that either the case of *State* v. *Clark,* 92 Ohio App., 382, or the case of *State* v. *Miclau,* 104 Ohio App., 347, constitutes valid authority to discharge the defendant, as claimed in the majority opinion, for in the *Clark case* the court referred, among other things, to ''the insufficiency of proof as to the element of wilfulness,'' and in the *Miclau case*, one of the appellate judges, concurring in an order of discharge, determined that much of the evidence necessary for conviction was incompetent by reason of the manner in which it was obtained, and the other determined that the defendant should be discharged because ''there is *no* evidence in

the record to substantiate the charge.'' The Supreme Court's affirmance of the judgment in the *Miclau case* (167 Ohio St., 38) decided, in essence, that there was a failure of proof of aiding, abetting, etc., the delinquency of a minor child because there was *no* proof of the delinquency of such child, and the majority of the Supreme Court specifically stated that they expressed ''no opinion with respect to the other questions of law considered in the two concurring and the dissenting opinions of the Court of Appeals.''

It is my conclusion, therefore, that, although the credibility of the witnesses was solely a matter for the trial court so long as he did not abuse his discretion in regard thereto, nevertheless, he did abuse his discretion and commit prejudicial error by basing the credibility of the defendant on evidence which was not relevent to the issues of the case and which had no probative value as to credibility; that by reason of this error the trial court's determination of credibility may not be accepted; that the evidence as to the commission of the crime remains in conflict; that this conflict of evidence creates a doubt as to the existence of prima facie evidence proving the elements of the crime charged; that this conflict and resulting doubt may be resolved only by a proper determination of credibility; that credibility being solely within the province of the trial court it cannot be determined by the appellate court; and that by reason of the prejudicial error, the resulting conflict of evidence, and the lack of authority of the appellate court to resolve the conflict, the judgment of the trial court must be reversed, and the cause should be remanded to the trial court for new trial and further proceedings as provided by law.