The STATE of Ohio, Appellee,

v.

THOMPSON, Appellant.

[Cite as *State v. Thompson* (1994), 97 Ohio App.3d 629.]

Court of Appeals of Ohio,
Butler County.

No. CA 93–12–233.

Decided Oct. 17, 1994.

*John F. Holcomb,* Butler County Prosecuting Attorney, and *James Sherron,* Assistant Prosecuting Attorney, for appellee.

*Charles M. Conliff,* for appellant.

---

*Per Curiam.*

Defendant-appellant, Ronald "K.C." Thompson, appeals convictions in the Butler County Court of Common Pleas, Juvenile Division, for contributing to the unruliness of a minor.

On July 1, 1993, appellant was charged with three counts of contributing to the unruliness of a minor pursuant to R.C. 2919.24(A)(1) for allegedly harboring ten-year-old Felicia Newman without her mother's permission on June 9, June 11, and June 12, 1993. A trial to the court commenced on October 13, 1993.

The state's evidence showed that appellant and his wife, Patricia Thompson, developed a relationship with Felicia when Felicia visited her aunt, who was living with appellant's family. Felicia continued to visit appellant's family every weekend even though her aunt moved out of state in March 1993.

Sometime before June 3, 1993, Kimberly Newman, Felicia's mother, told Felicia she could no longer visit or talk on the phone with appellant because of her deteriorating grades and behavior. Newman testified that she told appellant not to contact Felicia anymore.

On Wednesday, June 9, 1993, Felicia was staying at a friend's house with her mother's permission. Mark Young, the friend's father, testified that Felicia became upset around the time she called appellant. Felicia testified that she called appellant's home to talk to Patricia Thompson, his wife, who was not home. Appellant upset Felicia by telling her she must not love him and his family anymore because she had quit visiting them. Appellant then asked her to come to his house. Felicia stated that she agreed because she did not want to cause any problems. Appellant's wife testified that Felicia was upset because her mother's boyfriend had hit her.

Young agreed to allow appellant to pick up Felicia since she was so upset and because appellant told Young he was her uncle. Appellant then came to Young's house with a friend, Buzz O'Dell. Appellant appeared to be drunk and was carrying a handgun in his back pocket. Appellant asked Young, whom he had never met, to lie to Felicia's mother about the reason for allowing Felicia to leave with appellant. Felicia left Young's house without complaint and spent the night at appellant's house without her mother's knowledge or permission.

On Thursday, June 10, Patricia Thompson took Felicia to Kimberly Newman's place of employment. Newman told Felicia that she was in trouble. In Patricia Thompson's presence, Felicia lied to her mother about why she had spent the night at appellant's home. Newman could not keep Felicia at work, so she asked

Patricia Thompson to keep Felicia until she could pick her up after work. Newman's boyfriend picked Felicia up, which upset Felicia because she knew she would be in trouble.

On the next day, Friday, June 11, 1993, Felicia tried to call appellant while her mother was not home and spoke with his wife. Felicia claimed that Patricia Thompson asked her to come to appellant's house; Patricia Thompson stated that Felicia asked to come. Subsequently, O'Dell arrived at Felicia's home to pick her up, with appellant following on a motorcycle. They then stopped at three bars before arriving at appellant's home.

That evening, appellant called the Middletown Police Department, making allegations that Felicia was afraid to go home due to abuse by her mother's boyfriend. Since they did not have jurisdiction, the Middletown police officers referred the case to the Butler County Sheriff's Department.

Deputy Darrell Sizemore, the responding officer, was already aware of a missing person report on Felicia filed by Newman. When he arrived at appellant's home, appellant told Sizemore that he wanted custody of Felicia. Sizemore told appellant he could not give him custody of the child. At appellant's request, Sizemore questioned Felicia. However, Felicia did not tell Sizemore she was being abused in her mother's home; instead she told him about basic parental restrictions such as not being allowed to stay up as late as she wanted.

Since he could discern no reason to keep Felicia away from her mother, Sizemore told Felicia in the presence of appellant and his wife that Felicia would have to go home. Patricia Thompson and Felicia left the room to gather Felicia's clothes. Patricia Thompson returned a few moments later and stated that Felicia had jumped out a window and run away. At some point, Newman and her boyfriend had arrived and the situation grew hostile, so Sizemore sent them home, promising to come and assist them in making a report. After searching appellant's home, Sizemore told appellant that if Felicia came back, she would have to be returned home. Sizemore also told appellant that he had to follow proper procedures, such as calling the Butler County Children Services Board, if he felt Felicia needed to be placed in another home.

Felicia testified that O'Dell pulled her out the window. O'Dell claimed that he did so at Patricia Thompson's request and with her help. O'Dell took Felicia to his home, where appellant picked her up some time later. Appellant did not notify the police or the children services board of Felicia's whereabouts.

Felicia remained at appellant's house by herself on Saturday, June 12, while appellant went fishing. Felicia claimed she told appellant she wanted to go home but appellant would not take her. However, despite having access to the phone, she never attempted to call her mother. Patricia Thompson admitted that Felicia

was supposed to stay in the house since they did not want the police to find her. That evening, O'Dell announced he was taking Felicia home, and he returned her to her mother.

After hearing the evidence, the trial court dismissed the charge relating to Saturday June 12, 1993. However, the court found appellant guilty of the other two charges, specifically stating that appellant's motive was irrelevant to the issue of guilt. This appeal followed.

In his sole assignment of error, appellant states that the trial court erred in finding him guilty of contributing to the unruliness of a minor without considering his affirmative defense that he was attempting to protect the child from abuse. Appellant argues that he is immune from prosecution under R.C. 2151.421 since he had a good faith belief that the child was abused and he attempted to report that abuse to authorities. We find this assignment of error is not well taken.

■ R.C. 2919.24(A)(1) provides that "[n]o person shall * * * [a]id, abet, induce, cause, encourage, or contribute to a child * * * becoming an unruly child, as defined in section 2151.022 [2151.02.2] of the Revised Code * * *." R.C. 2151.022(A) defines an "unruly child" as any child "[w]ho does not subject himself to the reasonable control of his parents * * * by reason of being wayward or habitually disobedient." The state is required to prove beyond a reasonable doubt all elements of the offense, including whether the child was in fact unruly. *State v. Miclau* (1957), 167 Ohio St. 38, 4 O.O.2d 6, 146 N.E.2d 293, paragraphs one and two of the syllabus; *State v. Andriola* (1990), 70 Ohio App.3d 69, 71, 590 N.E.2d 403, 403–404.

■ R.C. 2151.421(G) confers immunity from civil or criminal liability on any person reporting in good faith known or suspected abuse of a child under eighteen years of age to a peace officer or children services board, and on any person participating in a judicial proceeding resulting from those reports. See *Gersper v. Ashtabula Cty. Children Serv. Bd.* (1991), 59 Ohio St.3d 127, 570 N.E.2d 1120. Appellant claims that since he had a good faith belief that Felicia was being abused he was immune from liability, and the trial court erred in failing to consider this immunity as an affirmative defense. We disagree. R.C. 2151.421 is inapplicable since appellant's convictions were not based upon or the result of his reporting the suspected abuse to the police. They were based upon harboring the child without her mother's permission and contrary to the instructions of a police officer.

We find only one Ohio case addressing the issue of affirmative defenses to violations of R.C. 2919.24 or its predecessor, former R.C. 2151.41. In *State v. Kosinski* (Jan. 12, 1981), Geauga App. No. 880, unreported, 1981 WL 4419, a mother was convicted of contributing to the unruliness of a minor after she removed her deaf-mute daughter from a foster home in which she was placed by

court order and took her to another state. The mother claimed her daughter had been raped by a teenage male in the foster home. The Geauga County Court of Appeals affirmed the conviction, concluding that the trial court did not err in refusing to admit testimony about the alleged rape. It found that there were no affirmative defenses to violations of former R.C. 2151.41, see R.C. 2901.05(C), and that testimony about the rape was irrelevant to the issue before the court, *i.e.,* whether the mother was guilty of contributing to the unruliness of a minor.

▉ We agree with the *Kosinski* court's reasoning. R.C. 2919.24(A) is a strict liability offense and therefore the defenses available to the accused are limited. *State v. Wood* (1989), 63 Ohio App.3d 855, 861, 580 N.E.2d 484, 488. The issue before the court was whether appellant contributed to the child's unruliness, *i.e.,* whether he aided or encouraged her in defying her mother. See *In Matter of Cooper* (Sept. 22, 1989), Seneca App. No. 13–88–34, unreported, 1989 WL 108730. The state presented sufficient evidence from which the trier of fact could reasonably find that the elements of the offense had been proven beyond a reasonable doubt, and therefore this court will not reverse the conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

▉ Even if the affirmative defense of protecting Felicia from abuse were available to appellant, the facts of this case are such that the defense is not persuasive. If appellant believed the child was being abused, he had ample opportunity to report that abuse to the proper authorities, but he did not. Instead, on Wednesday evening, appellant took the child from a friend's house where she was not in danger of being abused and harbored the child without her mother's knowledge or permission. Appellant did not call the police or other authorities, but instead returned the child to her mother the following day. On Friday evening, when appellant finally called the police, he did not follow the police officer's instructions and did not contact the police or the children services board when the child returned to his house from O'Dell's residence. Patricia Thompson even admitted that on Saturday they were hiding the child from the police.

▉ The defendant bears the burden to prove an affirmative defense by a preponderance of the evidence, and the trier of fact may reject that defense on the grounds of credibility. R.C. 2901.05(A); *State v. Barr* (Sept. 24, 1990), Preble App. No. CA90–02–004, unreported, at 4–5, 1990 WL 138353. In this case, though the trial court stated that appellant's motive was irrelevant, its comments also indicated it did not find that appellant had proved his allegations.

Based upon the foregoing, appellant's sole assignment of error is overruled.

*Judgment affirmed.*

JONES, P.J., KOEHLER and WALSH, JJ., concur.