OPINION
Defendant-appellant, Terry Rice, appeals his convictions in the Butler County Court of Common Pleas for attempted murder, felonious assault and aggravated menacing. We affirm the decision of the trial court.
Appellant has an extensive medical history of brain damage, seizures and mental health problems. In May 1999, appellant was under stress because he was unemployed and his wife was pregnant. Appellant, his wife, Joey, and their children resided with appellant's mother and stepfather.
One evening, appellant became angry with his three-year-old stepdaughter, Katelynn, because she lost the family's food stamp card. Appellant picked up Katelynn by her hair and threw her to the ground. Joey intervened to protect the child. Appellant asked Joey "do you want some of this?" He grabbed Joey by the throat and choked her until she began losing consciousness. Appellant's mother, Shirley Rice, heard the commotion and came to Joey's aid. Shirley repeatedly slapped appellant's leg while calling out to him and appellant eventually loosened his hold on Joey.
Later that evening, Joey entered the couple's bedroom and discovered appellant sharpening a hunting knife with a piece of sandpaper. Neither appellant nor Joey spoke. Joey observed appellant holding the knife against his wrists.
Eventually, everyone in the household except appellant went to bed. Around 2:00 a.m., appellant burst into the bedroom of his mother and stepfather. Appellant began punching his mother in the stomach and yelled, "why did you bring me into this fuckin [sic] world[?]" Shirley was able to free herself from appellant's attack. Appellant's stepfather, David Rice, instructed Shirley to call the police. Appellant, upon hearing David's instructions, attacked him. David managed to escape and leave the house. Appellant proceeded to break objects and damage some of the rooms in the house.
Appellant went outside and hugged his wife. He told her he loved her and instructed her to take the children to her mother's house. Appellant told Joey "it would all be over once the police arrived."
When the police arrived, they found appellant sitting on the front porch of the house. Appellant went inside the house when he saw the police. The police entered the house looking for appellant. Two officers entered the kitchen and appellant rushed through the back door yelling, "What the fuck do you guys want?" Appellant was carrying a screwdriver from his left hand. The officers asked appellant to put down the screwdriver and advised him that they only wanted to find out "what was going on." Eventually, appellant dropped the screwdriver in his left hand, but he simultaneously pulled the hunting knife from behind his back and lunged toward one of the officers. The officers asked appellant to put down the knife several times. Appellant consistently refused, stating, "you will have to shoot me or I'll kill one of you trying."
Appellant turned and left through the back door. The officers left through the front door and called for assistance. Meanwhile, appellant was pacing behind the house, yelling and taunting the officers. Other officers arrived on the scene. The officers pleaded with appellant to drop the knife, but appellant refused, insisting "you'll have to kill me or I'll kill you." Occasionally appellant would lunge or swing at an officer with his knife.
The police officers were able to surround appellant. Appellant raised his arm to wipe away chemical mace that had been sprayed in his face. At that time, Officer Christopher Fackey saw an opportunity to disarm appellant without the use of deadly force. Officer Fackey attempted to use his nightstick to knock the knife out of appellant's hand, but he missed. Appellant grabbed Officer Fackey, held him in place, and stabbed him three times. Appellant struck Officer Fackey in the upper arm, armpit and his side. Officer Fackey was trying to free himself from appellant when appellant attempted to stab him in the chest. The armored vest that Officer Fackey was wearing prevented appellant from plunging the knife into his heart. Officer Fackey shouted that he had been stabbed. Appellant threw his knife to the ground and the other officers apprehended him. Once the officers subdued appellant, he asked them why they did not kill him.
Appellant was charged with ten offenses: attempted murder, felonious assault, endangering children, four counts of domestic violence and three counts of aggravated menacing. Appellant pled not guilty by reason of insanity to all of the charges. The trial court ordered appellant to undergo an evaluation of his mental condition and determined appellant was competent to stand trial.
Appellant was tried to the bench. The trial court concluded that appellant proved by a preponderance of the evidence that he was not guilty by reason of insanity of endangering children and domestic violence. The trial court concluded that appellant failed to prove by a preponderance of evidence that he was not guilty by reason of insanity of those charges arising out of the events which occurred after the arrival of the police: attempted murder, felonious assault and three counts of aggravated menacing.
Appellant appeals his convictions and raises two assignments of error for review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN REJECTING THE DEFENSE OF NOT GUILTY BY REASON OF INSANITY.
Assignment of Error No. 2:
 THE COURT'S VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 In his assignments of error, appellant essentially argues that he met his burden of proving the defense of not guilty by reason of insanity by a preponderance of the evidence for every offense, and that the trial court's finding to the contrary was against the weight of the evidence.
A reviewing court will not reverse a judgment as against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eskridge (1988),38 Ohio St.3d 56, 59; City of Middletown v. Ramsey (Sept. 19, 1988), Butler App. No. CA87-11-149, unreported. The standard for reversal for manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
A plea of not guilty by reason of insanity is an affirmative defense that must be proved by a preponderance of the evidence. State v. Brown
(1983), 5 Ohio St.3d 133. A person is not guilty by reason of insanity only if he proves that "at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14).
"The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of the facts." State v.Thomas (1982), 70 Ohio St.2d 79, syllabus; see, also, State v. Filiaggi
(1999), 86 Ohio St.3d 230, 243. The trier of fact may reject an affirmative defense on the grounds of credibility. Id.; State v.Thompson (1994), 97 Ohio App.3d 629, 634. If the record demonstrates that the trier of fact has considered the insanity defense, the reviewing court should defer to the trier of fact's interpretation of the evidence. See State v. Curry (1989), 45 Ohio St.3d 109, 114. However, a trial court's judgment as to the defense of insanity will be reversed where overwhelming and uncontradicted evidence to the contrary is arbitrarily ignored. State v. Brown (1983), 5 Ohio St.3d 133, 134-35.
At trial, appellant presented the expert testimony of Bobbie Hopes, Ph.D. to support his defense of insanity. Dr. Hopes described appellant's unfortunate medical history. Appellant was an unrecognized twin and as a result of birth complications, suffered brain damage due to a lack of oxygen to his brain. Appellant's biological father physically abused him when he was three years old, causing him to have generalized brain damage. Appellant was the victim of other trauma during his life that possibly contributed to his generalized diffused brain damage.
Appellant began having seizures at the age of five. His last known seizure occurred at the age of fifteen. Some of appellant's seizures were violent. The seizures typically involved yelling and hitting followed by a period of amnesia. Appellant also had a history of attempted suicides.
Dr. Hopes opined that appellant had two seizures on the night that he attacked his stepdaughter, wife, mother and stepfather. The first seizure occurred during the incident with his stepdaughter and wife; the second occurred hours later in the bedroom of his mother and stepfather. According to Dr. Hopes, appellant lost touch with his surroundings during the seizures and became violent. After the seizures appellant was amnesic. He could not recall what he had done and only knew what had happened from what other people told him.
Dr. Hopes testified that appellant did not have any other seizures that night. Dr. Hopes opined that appellant was experiencing an "organic rage" that was precipitated by his most recent seizure when the police arrived. Dr. Hopes testified that appellant was aware of his actions from the time the police arrived. Appellant made a conscious, purposeful decision to provoke the police to shoot and kill him. This was the reason appellant taunted and yelled at the police, threatened them with the knife, and engaged in other insolent behavior. Appellant was aware of everything around him and was able to give Dr. Hopes a "lengthy, detailed blow by blow account of his interactions with the police." However, Dr. Hopes was under the impression that appellant did not remember stabbing Officer Fackey, and that he was only claiming to remember what happened.
Dr. Hopes opined that appellant, at the time of the commission of all of the offenses, did not know, as a result of a severe mental disease or defect, the wrongfulness of his acts. Dr. Hopes' opinion regarding appellant's insanity was drawn exclusively from an interview with appellant and her independent review of appellant's medical records and the police reports from the incident.
The trial court considered the testimony of the witnesses and the expert opinion of Dr. Hopes and concluded:
 The Court accepts and finds credible the opinion of Dr. Hope's [sic] concerning the incidents *** prior to the arrival of the police. The Court did not find credible, it does not accept the opinion of Dr. Hopes with respect to the events which occurred after the arrival of the police. The fact that the defendant did not and would not recall the stabbing of Officer Fackey does not in and of itself substantiate or render Dr. Hope's [sic] opinion that he was legally insane. This opinion and that determination hinges upon the defendant's candor during the interview. The Court takes exception to the validity of Dr. Hope's conclusion that the defendant would be honest with her in that regard. The Court does not find Dr. Hope's opinion credible with respect to the finding that "the most, for the most part" his actions in these events were beyond his awareness. The defendant recalled almost the entire incident following the arrival of the police and it is incredible that he suffered amnesia, he was unaware of his actions and the wrongfulness thereof, only during the period of time in which he stabbed Officer Fackey. The Court will specifically find the defendant was aware of what was happening, he was aware of his actions, he was aware of the wrongfulness of his actions once the police officers arrived, that he shared this plan with his wife, he repeatedly taunted the police to shoot him. Following the stabbing he immediately questioned the police as to why they didn't shoot him. Dr. Hope's opinion that the defendant's brain damage contributed to his decreased ability to tolerate frustration and decreased ability therefore to refrain from actions on those angry impulses she indicated resulted in some of the behaviors that were violent and uncontrollable. However, the fact that the defendant's reason at the time of the events was so impaired that he did not have the ability to refrain from doing the act or acts, again does not qualify the defendant as being legally insane. Dr. Hopes was unaware that the defendant had been sharpening his hunting knife, a hunting knife that he used rather, to stab Officer Fackey earlier in the evening. The defendant did not relate this information to Dr. Hopes. Furthermore, Dr. Hopes was unable to say whether this information would have changed her opinion. Clearly, it would indicate to the Court a design or a plan and an awareness of the wrongfulness of the defendant's actions. The Court finds that the underlying facts and assumptions of Dr. Hopes have been compromised as previously discussed to the point where the Court cannot accept her opinion concerning the defendant's sanity following the arrival of the police and following the subsiding of the defendant's seizures. *** The Court does not find that his mental was serious, major or extremely intense so as to find it severe, as required by the statute. The Court finds the defendant has not established the defense of insanity by a preponderance of the evidence with respect to [aggravated menacing, felonious assault and attempted murder.]
 It is the role of the trial court to assess the credibility of Dr. Hopes' testimony. The trial court did not arbitrarily ignore Dr. Hopes' expert testimony, nor was her testimony "overwhelming and uncontradicted." Even though the state did not produce any rebuttal testimony, Dr. Hopes' expert opinion was subject to rigorous cross-examination. The trial court did not find Dr. Hopes' opinion credible to the extent that she opined that appellant was legally insane during his interaction with the police. While Dr. Hopes attributed appellant's behavior with his family members to violent seizures, she hypothesized that appellant's behavior with the police was the product of rage caused by his seizures. Rage or passion, no matter how strong, is not an excuse for the commission of a criminal offense, unless the offender has been determined insane at the time of the crime. 4 Ohio Jury Instructions (2000), 80, Section 411.53(3); see, also, State v. Zych (Oct. 4, 1993), Clermont App. No. CA92-11-105, unreported.
The trial court carefully considered the evidence appellant presented to support his defense of insanity and this court must defer to the trial court's interpretation of that evidence. The trial court concluded that appellant did not prove by a preponderance of evidence that he was insane during his interaction with the police. This trial court's finding was not against the manifest weight of the evidence.
Appellant also argues that the trial court reached contradictory verdicts by concluding that appellant met his burden of proving that he was legally insane with regard to his actions toward his family, but not toward the police officers. The several counts in a multi-count indictment are not interdependent and an inconsistent verdict only arises out of inconsistent responses to the same count. State v. Brown (1984),12 Ohio St.3d 147, syllabus. Thus, a trier of fact can find a defendant guilty of some counts of an indictment and not guilty by reason of insanity of other counts, even when all of the counts in the indictment arise from the same event or series of events. See id. at 149. The record adequately support's the trial court's finding that appellant was legally insane only with regard to his conduct toward his family, but not with regard to his conduct toward the police officers. The verdict of guilty to some of the counts in this case is not inconsistent with the verdict of not guilty by reason of insanity on the remaining counts.
The trial court did not err by concluding that appellant did not prove by a preponderance of the evidence that he was not guilty by reason of insanity for aggravated menacing, felonious assault and attempted murder. Nor was the trial court's decision against the manifest weight of the evidence. Accordingly, appellant's assignments of error are overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.