[Cite as *In re Hamblin*, 2014-Ohio-3289.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


IN THE MATTER OF:                         :

    SKYLAR HAMBLIN                    :            CASE NO.   CA2013-04-061

                                      :            O P I N I O N
                                                        7/28/2014
                                      :

                                      :


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JC2013-0009


Traci Combs-Valerio, 240 East State Street, Trenton, Ohio 45067, for appellant

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee


    **PIPER, J.**

    {¶ 1}  Defendant-appellant, Skylar Hamblin, appeals her conviction in the Butler County Common Pleas Court, Juvenile Division, for contributing to the unruliness of a child. We affirm the judgment of the trial court.

    {¶ 2}  In the late evening/early morning hours of December 29-30, 2012, Officer Jo Hornschemeier responded to a noise complaint regarding a party being held at a residence in the city of Hamilton, which included an allegation that underage teenagers were drinking

alcoholic beverages at the party. Appellant and her boyfriend Dustin Allen lived at the residence along with Christopher Reiff and Christopher Jordan. The door to the residence's attached garage was open, and before making her presence known, Officer Hornschemeier observed a group of about ten persons in the back of the garage where loud music was playing. Two of the ten persons were juvenile females. The officer observed that a makeshift stage had been set up in the garage, with a metal "stripper pole" extending from the floor to the ceiling, and that there were scantily-clad teenage females and adult females dancing, three of whom were dancing on the stage. The officer saw that people were sitting around on couches and chairs by the makeshift stage, watching the females dance.

{¶ 3} Officer Hornschemeier observed open alcohol on the premises, including bottles of beer and cups of alcohol lying around the makeshift stage. She was also able to detect the odor of alcoholic beverage on the premises. She knew one of the females present because she had arrested her a couple of months earlier and knew that she was only 16 years old. She observed that the 16-year-old female was "barely dressed," wearing only "boy short underwear." After viewing the scene for about 30 seconds, Officer Hornshemeier knocked on the garage door as loud as she could so that the knocking could be heard above the loud music. Eventually, someone in the garage turned around and said, "oh sh_t, it's the cops." At that moment everyone started scrambling throughout the garage. To ensure her own safety, Officer Hornschemeier ordered everyone present to line up and then waited for other officers to arrive.

{¶ 4} Officer Shawn Fryman arrived a few minutes later. He entered the residence's living room where he saw a number of juveniles and adults. He saw that there were two juveniles in the living room, one male and one female, both of whom were 17 years old. He saw an adult male and a 14-year-old female "wrapped up together, intertwined in a bed," in a bedroom adjacent to the living room. He saw appellant in a second bedroom, sitting on the

- 2 -

floor. Appellant told Officer Fryman that "this was her residence" but "maybe not for long."

{¶ 5} The 14-year-old female, who was subsequently identified as T.P., originally told Officer Fryman that she was 17 years old and provided him with a false name when he asked her to identify herself. However, when T.P. stumbled on her birthdate, Officer Fryman "dug deeper" and learned that T.P. was actually 14 years old. Officer Fryman observed that T.P. had slurred speech, that her eyes were red and glassy, and that she smelled strongly of alcohol, more than any other person in the house. The officer also noticed that there were empty boxes of alcoholic beverage and cups containing liquid that smelled of alcoholic beverage on the premises. Officer Fryman charged appellant with contributing to the unruliness or delinquency of a child, under R.C. 2919.24, based on his observations of appellant and the residence where she was found, appellant's claim that she resided at the residence, and his belief that appellant was providing juveniles with a place to abuse alcohol and cigarettes and dance on a makeshift stage with a stripper pole.

{¶ 6} At appellant's trial, the state presented the testimony of Officers Hornschemeier and Fryman, who testified to the facts related above. The state also presented the testimony of T.P., who testified that she and her friends went to appellant's residence because "there was a party going on." T.P. testified that she already knew one of the persons who lived at the residence, Jordan. T.P. testified that she met appellant about ten to fifteen minutes after she arrived at the party and that appellant was introduced to her as the person who owned the house. T.P. testified that Reiff and Jordan told her to help herself to the alcoholic beverages on the table in the garage and in the refrigerator inside the house. T.P. testified that she had at least two alcoholic beverages at the party.

{¶ 7} T.P. testified that during the party, appellant came to the garage for about five minutes to smoke a cigarette and then returned inside, and that 20 to 30 minutes later, appellant's boyfriend announced that he and appellant had just broken up. T.P. testified that

she felt sorry for appellant and went to console her, and that she found appellant in her bedroom, at which point appellant told her that she was leaving and someone was coming to pick her up. T.P. testified that she then returned to the party and continued drinking alcoholic beverages and that an hour or so later the police arrived and charged her with being unruly. T.P. later admitted at trial that she was, in fact, unruly on the night in question. T.P. testified that when the party was going on, she felt "kind of" drunk, but when the police arrived about two hours after she came to the party, she got scared and sobered up somewhat, but still felt the intoxicating effects of the alcohol.

{¶ 8} After both sides presented their closing arguments, the trial court found appellant guilty as charged, noting that appellant lived at the residence in question, knew what was going on, knew juveniles were there, but did nothing to stop it.

{¶ 9} Appellant now appeals, assigning the following as error:

{¶ 10} Assignment of Error No. 1:

{¶ 11} "THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT WAS GUILTY OF VIOLATING SECTION 2919.24(A)(1), AS THE STATE DID NOT PROVE, BEYOND A REASONABLE DOUBT, THAT THE MINOR CHILD WAS, IN FACT, ADJUDICATED AS EITHER AN UNRULY OR A DELINQUENT CHILD, AS REQUIRED BY CASE LAW."

{¶ 12} Assignment of Error No. 2:

{¶ 13} "THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY AS IT IS AGAINST THE SUFFICIENCY OF THE EVIDENCE."

{¶ 14} Both of appellant's assignments of error involve her claim that the state failed to prove the elements of the offense of contributing to the unruliness or delinquency of a child, which is defined in R.C. 2919.24, as follows:

(A) No person, including a parent, guardian, or other custodian of a

- 4 -

child, shall do any of the following:

(1) Aid, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court becoming an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in section 2152.02 of the Revised Code;

(2) Act in a way tending to cause a child or a ward of the juvenile court to become an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in section 2152.02 of the Revised Code[.]

R.C. 2151.022 defines an "unruly child" to include "[a]ny child who behaves in a manner as to injure or endanger the child's own health or morals or the health or morals of others[.]" R.C. 2151.022(C).

{¶ 15} In order to convict under R.C. 2919.24(A)(*1*), the state is required to prove beyond a reasonable doubt all elements of the offense, including that the child was, in fact, unruly. *State v. Thompson*, 97 Ohio App.3d 629, 633 (12th Dist.1994). By contrast, in order to convict someone under R.C. 2919.24(A)(*2*), the state is *not* required to prove that the child was, in fact, unruly, since the child's status as an unruly child is not an element of the offense of "tending to cause" unruliness under R.C. 2919.24(A)(2). *State v. Andriola*, 70 Ohio App.3d 69, 71 (1st Dist.1990).

{¶ 16} In her first assignment of error, appellant argues the trial court erred by finding her guilty of R.C. 2919.24(A)(1), because the state failed to prove beyond a reasonable doubt that the minor child was "adjudicated" an unruly or delinquent child. Initially, appellant acknowledges that she was charged with violating both subsections (A)(1) and (A)(2) of R.C. 2919.24, but asserts that the trial court actually found her guilty of violating R.C. 2919.24(A)(1) rather than R.C. 2919.24(A)(2). In support, she points to the trial court's ruling at the close of the proceedings in which the court stated that "when I go through the statute, [R.C.] 2919.24, with what she's [appellant's] been charged, specifically *contributing* to the unruliness, delinquency of a child, I believe the State has met it's burden and that the Court

hereby finds that beyond a reasonable doubt the defendant [appellant] is guilty as charged[.]" (Emphasis added.) The state, for its part, acknowledges that while the complaint charged appellant under both subsections (A)(1) and (A)(2) of R.C. 2919.24, it proceeded against her under R.C. 2919.24(A)(1). As a result, we shall accept the parties' contention that the trial court found appellant guilty of violating R.C. 2919.24(A)(1).

{¶ 17} Appellant argues that in order to obtain a conviction under R.C. 2919.24(A)(1), the state is required to prove that the juvenile in question was *actually* unruly or delinquent, and that in order to prove that the juvenile was actually unruly or delinquent, the state is required to prove that the child "was, in fact, *adjudicated* as an unruly or delinquent child." (Emphasis added.) Appellant asserts that the state failed to prove that she violated R.C. 2919.24(A)(1) because it failed to provide any evidence, either by way of testimony or documents, to prove that T.P. or any other juvenile involved in this matter was adjudicated as an unruly or delinquent child. We find this argument unpersuasive.

{¶ 18} Appellant fails to cite any specific case law requiring the state to show that a child has been formally adjudicated as an unruly or delinquent child to obtain a conviction under R.C. 2919.24(A)(1), nor are we aware of any. Indeed, the case law in this state indicates that it is *not* necessary for the state to show that a child has been formally adjudicated as an unruly or delinquent child to obtain a conviction for that offense. See generally, *State ex rel. Meng v. Todaro*, 161 Ohio St. 348, 350 (1954) (interpreting former R.C. 2151.02 and holding that a finding or an adjudication in a separate proceeding that a juvenile was a delinquent child was not necessary before a prosecution for contributing to the delinquency of the juvenile could be maintained and that the contents of the affidavit filed against the defendant and the evidence presented at trial showed that the juvenile was a delinquent child).

{¶ 19} Consequently, in order to convict appellant under R.C. 2919.24(A)(1), the state

- 6 -

was not required to prove that T.P. or any other juvenile present on the night in question had been formally adjudicated as an unruly or delinquent child. See *id.* Instead, the state was required to prove merely that appellant "[a]id[ed], abet[ted], induce[d], cause[d], encourage[d], or contribute[d] to a child * * * becoming an unruly child * * * or a delinquent child[,]" R.C. 2919.24(A)(1), *and* that the child was, in fact, unruly. *Thompson*, 97 Ohio App.3d at 633.

{¶ 20} Here, the state presented sufficient evidence to show that appellant aided, abetted, induced, caused, encouraged, or contributed to T.P. becoming an unruly child and that T.P. was, in fact, unruly. The evidence showed that the officers who responded to the noise complaint observed bottles and cups containing alcoholic beverages in the garage and the living room area of the residence in question. T.P., who was 14 years old at the time in question, testified that two persons at the party, namely, Jordan, whom she knew, and Reiff, both of whom lived at the residence, told her to help herself to the alcoholic beverages that were on a table in the garage and in the refrigerator inside the residence. T.P. testified that she had not drank any alcohol before arriving at the party held at appellant's residence, that she had at least two alcoholic beverages during the party at appellant's residence, and that "when the party was going on [she] felt like drunk kind of but when the cop got there [she] kind of got scared and it kind of went away but [she] still felt it." Officer Fryman discovered T.P. "intertwined in a bed" with an adult male and observed that T.P. had slurred speech, her eyes were red and glassy, and she smelled strongly of alcoholic beverages, more so than any other person in the house. Additionally, T.P. acknowledged during her testimony that she was unruly on the night in question.

{¶ 21} In light of the foregoing, appellant's first assignment of error is overruled.

{¶ 22} In her second assignment of error, appellant argues her conviction for contributing to the delinquency of a child is not supported by sufficient evidence because

"[t]here was absolutely no evidence presented that [she] either aided, abetted, induced, caused, encouraged, or contributed to a child becoming unruly or delinquent." This argument lacks merit.

{¶ 23} In reviewing a sufficiency-of-the-evidence challenge, "[t]he relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Here, a review of the testimony shows that the state presented ample evidence to support appellant's conviction under R.C. 2919.24(A)(1).

{¶ 24} Officers were dispatched to appellant's residence as a result of a noise complaint, which included an allegation that there were underage teenagers drinking alcohol at the residence at which loud music was being played. When Officer Hornschemeier arrived, she saw there was a group of ten people in the garage, including two juvenile females. There was another group of six people in the living room of the residence, including three juveniles. Officers Hornschemeier and Fryman observed alcoholic beverages throughout the premises. Officer Fryman found appellant in one of the residence's bedrooms, sitting on the floor. In the second bedroom, T.P. was found "wrapped up" and "intertwined" in a bed with an adult male. T.P. had slurred speech, red and glassy eyes, and had a stronger smell of alcohol on her breath than anyone else on the premises. T.P. admitted that she became drunk during the party after drinking at least two alcoholic beverages, that she obtained the alcohol beverages from the refrigerator in the residence, and that Reiff and Jordan, who lived at the residence, told her to help herself to the alcoholic beverages that were on a table in the garage and in a refrigerator inside the residence.

{¶ 25} Additionally, the evidence shows that appellant was residing at the house at the time of the party at which T.P. became drunk. Appellant tried to downplay her connections to

the residence by testifying that she did not pay any rent to live there. However, appellant acknowledged that she received some of her mail at the residence. She also testified that she had objected to the stripper pole being set up in the garage because she was concerned that installing the pole violated the terms of the lease for the residence and she did not want to get evicted because of it. As the trial court noted, even though appellant paid no rent for staying at the residence, she was still "bearing some responsibility" for the residence and she was trying to prevent her and her fellow residents from being evicted from the residence.

{¶ 26} The evidence clearly permitted the trial court, in its role as the trier of fact in this case, to accept T.P.'s testimony about the events that took place on the night in question and reject appellant's testimony as to those events. *State v. Barnette*, 12th Dist. Butler No. CA2012-05-099, 2013-Ohio-990, ¶23 (the trier of fact is in the best position to assess the witnesses' credibility and therefore is free to accept or reject any or all the testimony of any witness). Thus, the trial court was free to reject appellant's claims that she did not come out of her bedroom on the night of the party; that she was unaware that a party was occurring that night, as the music being played at the party was loud enough for someone to call the police to complain; that she did not see or speak with T.P. until after Officer Fryman ordered everyone to come into the living room area. Conversely, the trial court was free to accept T.P.'s testimony that she met with appellant shortly after arriving at the residence, at which time appellant was introduced to her as the owner of the residence; that during the party, appellant came outside of her bedroom to the garage for about five minutes to smoke a cigarette; that she went into the bedroom where appellant was and spoke with her to console her. *Id.* Likewise, the trial court was free to believe Officer Fryman's testimony that T.P. had a strong odor of alcohol about her, more so than anyone in the house, and thus to infer that appellant had to have been aware that T.P. had been drinking at the party. The trial court was also entitled to believe Officer Fryman's testimony that when appellant was in the

booking area of the police station, she told two men who were sitting next her that they were never going to have juveniles over again, and the trial court was entitled to disbelieve appellant's denial that she had made that remark. *Id.*

{¶ 27} When viewed in a light most favorable to the state, the evidence establishes beyond a reasonable doubt that appellant was residing at the residence when the party was occurring; that she was aware that alcohol was being served at the residence; that she was aware that juveniles, including T.P., were present; that she was aware that T.P., who smelled strongly of alcohol, more so than anyone else at the residence, was consuming alcohol. All of the state's evidence presented in this case would allow a rational trier of fact to conclude that appellant was providing juveniles a place to abuse alcohol and tobacco and dance on a make-shift stage with a stripper pole, all "in a manner as to injure or endanger the [juveniles'] own health or morals or the health or morals of others," R.C. 2151.022(C), and therefore that appellant had aided, abetted, induced, caused, encouraged, or contributed to the unruliness of a child in violation of R.C. 2919.24(A)(1).

{¶ 28} Accordingly, appellant's second assignment of error is overruled.

{¶ 29} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.