The STATE of Ohio, Appellee,

v.

ELLIS, Appellant.

[Cite as *State v. Ellis* (1989), 64 Ohio App.3d 158.]

Court of Appeals of Ohio,
Greene County.

No. 88–CA–88.

Decided June 29, 1989.

*Joe R. Fodal,* Prosecuting Attorney, for appellee.

*James R. Kirkland,* for appellant.

Fain, Judge.

Defendant-appellant, Gary Robert Ellis, appeals from the judgment of the trial court, sitting without a jury, which found him guilty of acting in a way tending to cause a child to become unruly or delinquent, in violation of R.C. 2919.24. Essentially, Ellis contends the trial court erred in that the evidence in this case failed to show that any action of the appellant caused any unruliness of the child, and that the trial court erred in ignoring the parental rights of instruction and of discipline within the privacy of the home.

## I

The state agrees with the statement of facts submitted by defendant-appellant.

Ellis married Georgeanne in Texas on March 5, 1978. They had twin daughters: Laura E. Ellis and Lindsay S. Ellis, born July 1, 1979. Ellis adopted his wife's daughter from a previous marriage, Nonja, born August 4, 1972. Ellis had one son from a previous marriage, Gregory, born March 30, 1973.

During 1987 and 1988, Mrs. Ellis was in Korea on assignment with the United States Air Force. Ellis was also in the Air Force. Ellis took sole charge of their three daughters in their home for over one year. Ellis learned that his wife had an affair while in Korea, and he considered filing for divorce.

In February 1988, Mrs. Ellis filed a complaint for divorce in the Court of Common Pleas of Greene County. Both parents sought custody of the three children. Ellis filed an answer and counterclaim for divorce.

In March 1988, Mrs. Ellis filed a complaint alleging that Ellis had acted in a way tending to cause Nonja Ellis, a minor, to become an "unruly child," as defined in R.C. 2151.022, or a "delinquent child," as defined in R.C. 2151.02, in violation of R.C. 2919.24, which prohibits any person from contributing to the unruliness or delinquency of a child.

Ellis allowed Mrs. Ellis to have the children. Mrs. Ellis was reassigned to an air base in Nevada. Mrs. Ellis alleged that at all times the incidents of which she complained occurred in the home while Ellis was solely and fully responsible for the children.

At trial, Nonja, then fourteen, and her friend Susan ("Nicki") Vogel, then fifteen, testified that on one occasion at Ellis's home one evening, they and Gregory, then sixteen, decided to play a variation of strip poker. They did not actually remove their clothes, but contributed clothes from extra clothing they had assembled for the game. Susan testified that Ellis asked to join, but they refused, so he said he would referee.

Apparently, Gregory was losing and the three children decided that he should be required to "streak," or run naked through the house. Gregory did so, but the girls complained he violated either the letter or the spirit of the rules by "streaking" in such a way that he deprived the girls of an opportunity to observe him. The girls appealed to Ellis, who told Gregory that he had agreed to "streak" and must "pay up." Gregory then streaked in a manner deemed satisfactory.

The children agreed to play three more games. The girls, playing as a team, lost; Gregory insisted that they "streak." The girls were reluctant to do so and "stalled." Gregory appealed to Ellis, who told the girls to "hurry up and get it over with." The girls eventually complied.

On a second occasion, Ellis yielded to Nonja's insistence that she was going to get "blitzed" on her fifteenth birthday. Ellis purchased four four-packs of wine coolers and a bottle of Aste Spumante, which Nonja chose. Ellis then permitted Nonja and Susan to drink the beverages in his home. Nonja eventually became sick (vomiting), as a result of the alcohol.

The only serious conflict in the testimony concerns what happened next on this occasion. Ellis, who said he allowed the girls to drink at home because he was concerned that they might take his car without permission, as they had done on several occasions, and get drunk, testified that nothing happened after the drinking episode. He also testified that he had recently learned that

Susan's parents had been allowing Nonja and Susan to consume alcohol, and assumed that Susan's parents would not object.

Susan, however, testified that on the night she and Nonja drank, she played strip poker with Ellis until he started to remove his pants, at which point she ended the game. Ellis, however, denied that there was any strip poker game that evening. The trial court may have concluded that this second strip poker game was not proven by the evidence, since any references to it are conspicuous by their absence from the trial court's findings.

Ellis was found guilty of contributing to the unruliness or delinquency of a child. The court found that on one occasion the children were involved in a game of strip poker, which Ellis admittedly supervised, and on another occasion the girls were allowed to drink as much as they wanted of wine coolers and other alcoholic beverages made available to them by Ellis.

While the court found Ellis guilty, it was of the opinion that his actions exhibited extremely poor judgment, at best, but were not sufficient to warrant incarceration. Ellis was fined $500 plus court costs and given a twenty-day jail sentence. $200 of the fine and the jail sentence were suspended on condition that Ellis not engage in any similar conduct in the future. From his conviction and sentence, Ellis appeals.

## II

Ellis's first assignment of error is as follows:

"The Trial Court erred in that the evidence in this case failed to show any action of the defendant to cause any unruliness of the minor child."

■ Ellis maintains that the evidence failed to show he did anything that would lead Nonja to become a delinquent or unruly child. He contends that he did not tell Nonja and the others what to play, nor did he make them take any action they had not agreed upon. Ellis testified that he had been advised during counseling sessions with Mrs. Ellis and Nonja that the counselor had run out of ideas, and that he should allow Nonja more freedom in areas not affecting her health or the welfare of the family, and that he was following those instructions.

Ellis was charged with violating R.C. 2919.24, which states, in pertinent part, that no person shall:

"(1) Aid, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court becoming an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in section 2151.02 of the Revised Code; [or]

"(2) Act in a way tending to cause a child or a ward of the juvenile court to become an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in section 2151.02 of the Revised Code."

An "unruly child" is defined in R.C. 2151.022, in part, to include any child:

"(A) Who does not subject himself to the reasonable control of his parents, teachers, guardian, or custodian, by reason of being wayward or habitually disobedient;

" * * *

"(C) Who so deports himself as to injure or endanger the health or morals of himself or others;

" * * *

"(E) Who is found in a disreputable place, visits or patronizes a place prohibited by law, or associates with vagrant, vicious, criminal, notorious, or immoral persons;

"(F) Who engages in an occupation prohibited by law, or is in a situation dangerous to life or limb or injurious to the health or morals of himself or others[.]"

A "delinquent child" is defined, in part, to include one:

"(A) Who violates any law of this state, the United States, or any ordinance or regulation of a political subdivision of the state, which would be a crime if committed by an adult." R.C. 2151.02.

On the first occasion, as noted above, Ellis not only permitted, but enforced the rules of, a strip poker game and streaking between the three teenagers. Susan testified to the first occasion as follows:

"A. We started to play the game. Mr. Ellis wanted to join in and we said no. So, he said he would referee. * * * He stated he wanted to be there when we played to make sure nothing went wrong."

Gregory lost and had to streak in front of the girls. The girls said he cheated by running behind the couch, so he ran again, apparently at Ellis's direction. They then played three more games. The girls lost and were required to streak, but were reluctant to do so. Susan testified to the following, as regarding that episode:

"Q. I guess what I am asking you is, how, if at all, was Gary Ellis participating in the game at that point?

"A. He was watching * * *.

"Q. So what did you do?

"A. We went into the computer room and stalled for awhile. * * * We really didn't want to do it. * * *

"Q. Describe what happened then.

"A. Greg would sometimes pound on the door. Ellis, at the time, was supposed to be in his room. * * * At one time, he [Mr. Ellis] came to the door, saying we were taking too much time. * * *

"A. So, the agreement was, Mr. Ellis would go back to his room and we would come out. * * * When we did [come out], I was the first person to leave the room and I was running around the corner and I ran into Mr. Ellis. * * *

"Q. So what happened when you ran into him?

"A. Somehow, I ended up on the floor, and—

"Q. Did you have any clothes on at that time?

"A. No."

This testimony is sufficient to establish that appellant violated R.C. 2919.24. Ellis testified that he did not tell the children to play cards, or tell them what kind of cards to play, or make them take any action which they had not discussed. However, his conduct aided or contributed to the child's unruliness.

To "contribute" is defined as to aid in bringing about or to act as a determining factor. American Heritage Desk Dictionary (1981) 229–230. To "aid" is defined as to give help or assistance. *Id.* at 21.

Ellis permitted the children to play strip poker and to streak if they lost the game, rather than putting a stop to an activity that is not conducive to the good morals of children of mixed sexes aged 14, 15, and 16. Ellis was present in the house and knew what was happening.

Furthermore, Ellis told Gregory he had to streak and told the girls, while they were stalling, that they were taking too much time. Ellis attempted to justify what he told Gregory as "the lesser of two evils." "I felt like it was important for Gregory to learn the lesson that he not do or not say that he was going to do stuff and then back out on it." We conclude that Ellis should have stopped the game before it reached this point. His enforcement of the rules of the game of strip poker contributed to the children's behavior in that he not only made no effort to stop their game, but actually facilitated the game by enforcing the rules.

Strip poker, at least to the extent of one of the players being required to strip naked, is an unruly activity among three children between the ages of fourteen and sixteen, since it tends to undermine what are still believed to be

good morals by most people. Even if the participants have agreed in advance that they will strip naked if they lose, the enforcement of that agreement is degrading to the loser, and may adversely affect the loser's concept of his or her sexuality in a way that is unhealthy, especially since sexual awareness is in an active stage of development among most children of this age range. The trial court could well find that the strip poker game constituted an unruly activity.

We agree that Ellis's actions, even if they did not actually cause or induce the children's behavior, were sufficient to aid and to encourage the game, and the streaking activity. Ellis's first assignment of error is overruled.

### III

Ellis's second assignment of error is as follows:

"The court's decision regarding the use of wine coolers and alcoholic beverages is contrary to the parent's right of instruction in the privacy of the home."

Ellis testified that Nonja constantly pressured him regarding the use of alcohol. Knowing that Nonja, and sometimes Susan, had taken his automobile for drives without his permission, he feared that they would drive the car somewhere to obtain alcoholic beverages and then drink while driving. Ellis contends that he bought the alcoholic beverages and allowed the girls to drink at home to prevent injury to them and to others and to "have learning at home" where he could "keep an eye on them."

Further, Ellis argues that he did not pour the drinks or force either child to drink. He testified that he did not encourage such behavior outside the home. Finally, Ellis cites R.C. 4301.69 as impliedly authorizing a parent to furnish alcohol to a minor.

Nonja testified as follows regarding the occasion on which she and Susan were permitted to drink alcohol and the disputed strip poker game that followed:

"Q. Now, on this particular Saturday, what happened?

"A. Well, I had requested to get drunk. I wanted to get really blitzed and I asked him if he would buy some alcohol.

"Q. By he, you are referring now to whom?

"A. To Gary. And he said yes. * * *

"Q. Was this a joint request with you and Nicki [Susan] or was it just you?

"A. Yes, it was joint. * * *

"Q. Would you describe then what happened after you spoke to your father then on that date and you told him what you have just indicated? What did he say; what did he do?

"A. I told him that I wanted to do it. He said, Okay, we'll do it. So, we went down to the grocery store and I selected various types of coolers and an Asti Spumante because Nicki wanted Asti Spumante.

"Q. And who went to the store?

"A. Me and Gary. * * *

"Q. And how much—how many items did you buy?

"A. We bought three four-packs and one bottle of wine. * * *

"Q. And what did you drink? Did you drink wine coolers and wine or just one or the other.

"A. Wine coolers and wine.

"Q. And what about Nicki, what was she drinking?

"A. Wine coolers and wine. * * *

"Q. What effect, if any did the consumption of alcoholic beverages have on you? * * *

"A. It made me very sick and very, I don't know, drunk. I was drunk.

"Q. How did it affect your overall stability or coordination?

"A. I had no coordination. I was very shaky. Couldn't walk straight.

"Q. Could you describe Nicki's coordination generally, if you can recall.

"A. She was very non-coordinated.

"Q. Can you describe there late in the evening hours, did you and/or Nicki and/or your father become involved in another game?

"A. Nicki and Gary did.

"Q. What game was that?

"A. It was a stip [sic] poker game. * * *

"Q. How did that game originate; whose idea was it, if you know?

"A. I don't know. I honestly don't know. * * *

"Q. Can you describe what you saw, what took place?

"A. They dealt the cards and Nicki was winning and won again, and he took off his shirt. He had a T-shirt on. Then she won again, and I kept saying, You don't know what you are doing; don't do this. And I kept yelling at both of them to stop, and they both told me to shut-up at the same time. It was kind of funny. He took his pants down to his ankles.

"Q. What kind of pants did he have on?

"A.  Sweats.

"Q.  Did he have underwear on underneath?

"A.  Yes.

"Q.  So what happened then?

"A.  Then Nicki said, No, no, no, forget it.  And she didn't think he would go that far.  So they quit after that."

■  We agree with Ellis that R.C. 4301.69 does not prohibit a parent or legal guardian from providing alcoholic beverages to a person under twenty-one years of age.

"(A) Except as otherwise provided in this chapter, no person shall sell beer or intoxicating liquor to a person under the age of twenty-one years, or buy beer or intoxicating liquor for, or furnish it to, a person under the age of twenty-one years, * * * unless the person under twenty-one years of age is accompanied by a parent, spouse, or legal guardian."  R.C. 4301.69.

■  However, while R.C. 4301.69 does not itself prohibit a parent from serving liquor to his child, it does not grant the parent a privilege to provide his minor child with alcoholic beverages under circumstances constituting a violation of other statutes.  Indeed, the provision of alcoholic beverages to a minor, under certain circumstances, might well be considered as tending to contribute to the unruliness or delinquency of a minor, a violation of R.C. 2919.24.

Parenthetically, Ellis's serving of liquor to Susan, his daughter's friend, raises none of the concerns addressed herein with respect to his having served liquor to his daughter.  However, the complaint initiating this prosecution did not charge Ellis with contributing to the unruliness of any person other than his daughter Nonja.

We recognize Ellis's dilemma.  His fourteen-year-old daughter had approached him several times about getting "blitzed," as her testimony admits.  Nonja had driven his car without his knowledge or permission on numerous occasions, even after he had found out and taken the keys from her.  Ellis testified that he was concerned she would get drunk regardless of what he did, so he relented and told Nonja she could drink at home where he could keep an eye on her.

Ellis testified that the counselor had told him he had run out of ideas, and that he should try allowing Nonja more freedom in areas that did not impact on her health or the welfare of her family.  Ellis hoped to promote learning at home and to keep Nonja from being injured by allowing her to drink at home.

Had he not permitted Nonja to drink at home, she may have taken the car as he feared, and injured not only herself and Susan, but other people as well.

Had Ellis decided not to permit Nonja to drink at home, he would have been running some risk that he might thereby have been deemed to have violated R.C. 2919.24. Under R.C. 2151.022, an unruly child is one who: does not subject himself to the reasonable control of his parents; so deports himself as to injure or endanger the health or morals of himself or others; is found in a disreputable place, or associates with disreputable persons; or is in a situation dangerous to life or limb or injurious to the health or morals of himself or others. R.C. 2151.022(A), (C), (E) and (F). Had Nonja taken Ellis's car in search of alcohol, she would obviously have been endangering the health of herself and others. Any bar or liquor store which serves alcohol to a minor is not a reputable place within the meaning of R.C. 2151.022(E).

We need not decide, however, whether Ellis's decision to allow Nonja to drink at home tended to contribute to her unruliness or delinquency as a minor. As discussed above, Ellis's enforcement of the strip poker game rules was a sufficient finding, in itself, to establish a violation of R.C. 2919.24. Ellis's conviction was therefore based upon at least one finding of fact concerning which there was no error on the part of the trial court. Furthermore, from the minimal sentence imposed, it seems unlikely that the trial court would have imposed a lighter sentence had it disregarded the circumstances surrounding the provision of liquor to Nonja in assessing the sentence to impose.

Ellis's second assignment of error is overruled.

## IV

Ellis's third assignment of error is as follows:

"The court's decision is contrary to the parents' rights of discipline and instruction within the home."

Ellis again argues that because the controversial incidents occurred in his home, he had every right to do as he pleased. Ellis contends that what he wants to teach and how he wants to teach is his choice, and his actions did not affect others. Ellis also believes that evidence regarding the other children, Susan and Gregory, prejudiced the situation. He contends that the evidence should have been limited to evidence concerning Nonja only, and that Nonja was not "changed" by what happened.

A parent has the right to care for his children as he deems best, *subject* to the state's right to act reasonably and responsibly for the protec-

tion of such children.  *Kraus v. Cleveland* (C.P.1953), 66 Ohio Law Abs. 417, 436, 55 O.O. 6, 16, 116 N.E.2d 779, 794;  46 Ohio Jurisprudence 3d (1983) 247, Family Law, Section 300.  As a parent, Ellis's rights of discipline and instruction are not paramount to the state's right and duty to protect the child, as exemplified by R.C. 2919.24, which prohibits contributing to the unruliness or delinquency of a minor.

██  The portion of R.C. 2919.24 that prohibits acting in a way tending to cause delinquency does not require that the minor, as a result of those acts, become a delinquent.  46 Ohio Jurisprudence 3d (1983) 578, Family Law, Section 559.  If the acts within themselves possess a nature and character that make it probable that the minor will be led into delinquency, such acts may be considered as "tending to cause delinquency."  *State v. Clark* (1952), 92 Ohio App. 382, 49 O.O. 437, 110 N.E.2d 433.

██  Ellis's contention that Nonja did not "change" is of no consequence where his acts tend to cause delinquency.  As discussed above, participating in strip poker games and "streaking" are acts that can reasonably be deemed to cause unruliness or delinquency among teenagers.  Ellis's third assignment of error is overruled.

## V

All of Ellis's assignments of error having been overruled, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., and BROGAN, J., concur.