[Cite as *State v. Howard*, 2017-Ohio-8119.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

State of Ohio                                      Court of Appeals No. F-17-003

      Appellee                                Trial Court No. 2143059

v.

Sherry Howard                                 **DECISION AND JUDGMENT**

      Appellant                               Decided:  October 6, 2017

* * * * *

Scott A. Haselman, Fulton County Prosecuting Attorney, and
T. Luke Jones, Assistant Prosecuting Attorney, for appellee.

Gary L. Smith, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Defendant-appellant, Sherry Howard, appeals the June 16, 2017 judgment of

the Fulton County Court of Common Pleas, Juvenile Division, sentencing her for a

conviction of contributing to the delinquency of a child.  For the following reasons, we

affirm.

## I. Background

{¶ 2} On November 17, 2016, the Delta police filed a complaint against Howard in the Fulton County Court of Common Pleas, Juvenile Division, alleging that she violated former R.C. 2919.24(A)(1),[1] contributing to the delinquency of a child, a misdemeanor of the first degree. The case was tried to the court on January 30, 2017, after which the trial court convicted Howard of the single count in the complaint. Howard opted to proceed directly to sentencing, and the court sentenced her to three years of unsupervised community control and 90 days in jail with 87 days suspended. The trial court stayed the jail term pending appeal. Howard filed her notice of appeal on February 7, 2017.

{¶ 3} Howard raises two assignments of error:

I. The Trial Court Erred When Finding Defendant/Appellant Guilty of a Violation of O.R.C. Section 2919.24(A)(1) Based Upon Evidence Which, if Believed, Was Legally Insufficient to Support a Conviction[.]

II. The Trial Court's Verdict of Guilty Was Against the Manifest Weight of the Evidence[.]

## II. Facts

{¶ 4} The complaint against Howard arose from two events in October 2016: a shopping trip and a high school dance.

---

[1] The same offense is currently found in R.C. 2919.24(B)(1). We will refer only to R.C. 2919.24(A), as that was the section applicable at the time Howard was charged.

2.

## A. The Dance

{¶ 5} On October 15, 2016, Pike-Delta-York High School held its homecoming dance. A.M.C., the minor daughter of Howard's cousin, Angela Miller, and J.W., Howard's minor daughter, attended the dance. They drove together in A.M.C.'s car.

{¶ 6} Officer Drew Walker of the Delta Police Department was patrolling the high school parking lot during the dance. While patrolling, Officer Walker saw a white Impala with the backseat partially folded down, allowing him to see into its trunk. Two bottles of liquor were plainly visible through the opening in the back seat. He traced the car to A.M.C., who agreed to open the car for him. Officer Walker found four bottles of liquor, four wine coolers, drugs, and drug paraphernalia during his search. While Officer Walker investigated the situation, school officials found J.W. and brought her to the car because she and A.M.C. came to the dance together.

{¶ 7} Officer Walker eventually had the girls contact their parents to pick them up. Miller testified that Howard called her after learning that the girls were in trouble and asked Miller to take the blame for the alcohol. Howard, on the other hand, testified that Miller was screaming and cursing on the phone while Howard told Miller that the bottles belonged to Howard and Howard did not understand why there was a problem. She explained that she thought that Miller—not A.M.C.—drove to the dance and thought that the bottles were left in Miller's trunk by mistake. Howard later realized that the bottles were found in A.M.C.'s car.

3.

**{¶ 8}** As a result of Officer Walker's discovery of the alcohol, complaints in delinquency were filed against both A.M.C. and J.W.

### B. The Shopping Trip

**{¶ 9}** Prior to the homecoming dance, on October 13, 2016, Howard, Miller, A.M.C., and J.W. went shopping. During the trip, Howard purchased the liquor that Officer Walker found in A.M.C.'s trunk. Howard, Miller, A.M.C., and J.W. each provide a different version of the evening's events, but they all agree on several pertinent details. First, they agree that Howard purchased the bottles of liquor at the Rite-Aid store in Wauseon on October 13, 2016. Second, they agree that Miller drove all of them to Rite-Aid and Wal-Mart that night in her car. Third, they agree that the bottles of liquor were removed from Miller's car and placed in Howard's garage before Miller left Howard's home after the shopping trip. And finally, they agree that a post-homecoming party for high school students at Howard's house did not happen. Why Howard purchased the alcohol and how the bottles of liquor ended up in A.M.C.'s trunk are disputed.

**{¶ 10}** Miller was the first to testify to her version of the story. According to her, the purpose of the trip to Rite-Aid was "to get alcohol for the girls" for a post-homecoming party that Howard planned to hold at her house. Miller claimed that the girls were talking about the party and were excited to be shopping for supplies. Howard never told Miller that she was purchasing alcohol for the post-homecoming party. Although Miller was at Rite-Aid, she was not in the liquor section for the majority of the time that Howard and the girls were shopping.

4.

**{¶ 11}** After Howard purchased the liquor at Rite-Aid, the group went to Wal-Mart, where Howard purchased food for a party, a case of beer, and some wine coolers. They then went to Howard's house where all four unloaded the groceries. Miller recalled that Howard told the girls to put the bottles of liquor behind the washer and dryer in the garage, which was the last she heard about the bottles until they were found in A.M.C.'s car. Miller further testified that she went home after the groceries were unloaded. Miller speculated about how the alcohol might have ended up in A.M.C.'s trunk, but she clearly indicated that she did not know how the bottles got there.

**{¶ 12}** Next, A.M.C. testified to her version of events. She claimed that the alcohol was purchased for "after homecoming" when she and J.W. planned to "party" at Howard's house, during which they would drink the liquor. Although she and J.W. planned the party, A.M.C. claimed that Howard and Miller both knew about it. A.M.C. testified that she and J.W. were involved in choosing the alcohol Howard bought, and she recalled J.W. giving Howard money to purchase the alcohol. A.M.C. testified that she and J.W. took the alcohol from Howard's garage the night it was purchased and put it in A.M.C.'s trunk, where it stayed until Officer Walker found it on October 15. She did not believe that Howard knew that the girls planned to steal the alcohol.

**{¶ 13}** The third version of events came from J.W. She denied that her mother planned a post-homecoming party and denied that Howard purchased the liquor for such a party. J.W. testified that she was at Rite-Aid on October 13 and that Howard purchased alcohol there, but denied that she and A.M.C. were involved in choosing the liquor.

5.

Rather, she claimed that the alcohol was for Howard's use. She testified that the money she gave Howard at Rite-Aid was for her mother from her father. J.W. claimed that she and A.M.C. had planned to steal the alcohol Howard purchased, but that Howard was unaware of their plan. She said that the girls took the bottles from the garage and put them in A.M.C.'s trunk after Miller left the house and Howard went to bed.

{¶ 14} Finally, Howard testified to her own version of events. She claimed that the trip to Rite-Aid and Wal-Mart was for the purpose of purchasing food and alcohol for social events. She said that the girls had invited friends to come to her house after the homecoming dance on October 15 and she had invited other adults to her house to watch a football game the same evening. Howard admitted to buying liquor at Rite-Aid, claiming that is was for a Halloween party later in the month. She also admitted that the girls were with her in the liquor section, but claimed that she told them not to touch the liquor and smacked one girl's hand when she tried to touch a bottle.

{¶ 15} Howard explained that the money J.W. gave her came from J.W.'s father. She claimed that it was meant for the purchase of hair extensions for J.W. to wear to the homecoming dance and that she asked J.W. for the money so that J.W. did not spend it while they were at Wal-Mart. Howard further testified that she purchased party food, beer, and wine coolers at Wal-Mart. Contrary to her testimony that the liquor was for a different party, Howard said that she purchased the beer for Miller to drink during the football game because Miller does not drink liquor.

6.

{¶ 16} Howard steadfastly denied knowing about the girls' plot to take the liquor. She claimed that she first learned about the girls having alcohol when J.W. called for a ride home from the dance.

{¶ 17} In addition to its witnesses, the state presented Rite-Aid surveillance video from the evening of October 13. The video shows Howard, J.W., and A.M.C. walking into the liquor section and shopping for approximately six minutes. During that time, J.W. and A.M.C. are seen browsing the shelves, pointing to bottles, and talking with Howard. Howard holds up one of the bottles to show the girls and then has several seconds of discussion with them before putting the bottle in the cart. Though the camera view of the group is blocked by shelves for brief periods, the girls do not appear to be touching or attempting to touch any alcohol, nor does the video show Howard smacking either girl's hand.

{¶ 18} As the group is leaving the liquor section, the video shows Howard saying something to J.W., who stops and pulls money out of her pocket. She hands some bills to Howard and, after several seconds of Howard speaking to her, hands Howard another bill before putting the money remaining in her hand back in her pocket. At the register, Howard removes her wallet from her purse, shows the cashier her ID, puts her wallet back in her purse, and pulls cash from her pocket to pay for the liquor. Afterward, she puts her change back in her purse. Howard and Miller each take a bag holding the bottles and the group leaves the store.

7.

### III. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 19} Howard first objects to the sufficiency of the evidence supporting her conviction. She argues that a conviction under R.C. 2919.24(A)(1) requires the state to prove some nexus between the defendant's behavior and a child's delinquency, which it failed to do in her case. The state counters that Howard's purchase of the liquor was a sufficient link to J.W.'s and A.M.C.'s delinquency adjudications to allow the court to find Howard guilty of contributing to the delinquency of a child.

{¶ 20} In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal quotations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 21} Under former R.C. 2919.24(A)(1), it is illegal for any person recklessly to aid, abet, induce, cause, encourage, or contribute to any child becoming a delinquent child. *State v. Moody*, 104 Ohio St.3d 244, 2004-Ohio-6395, 819 N.E.2d 268, syllabus (recklessness is the mental state required for a conviction under R.C. 2919.24(A)).

8.

Recklessness occurs when a person, with heedless indifference to the consequences, disregards a substantial and unjustifiable risk that her conduct is likely to cause a certain result or be of a certain nature. R.C. 2901.22(C). Of the actions that R.C. 2919.24 prohibits, "cause" or "contribute to" are the only two that might apply to Howard's situation. "Cause" is defined as an act that in a natural and continuous sequence directly produces a child's delinquency and without which the delinquency would not have occurred. *In re Kent*, 5th Dist. Stark No. 2000CA0167, 2001 Ohio App. LEXIS 432, 15 (Feb. 5, 2001). "Contribute to" means help or assist in bringing about or act as a determining factor. *State v. Ellis*, 64 Ohio App.3d 158, 164, 580 N.E.2d 1112 (2d Dist.1989). A delinquent child is a person under the age of 18 years who violates any law (other than traffic laws) that would be an offense if committed by an adult. R.C. 2152.02(C)(1), (E)(1).

{¶ 22} Proof beyond a reasonable doubt of a child's delinquency is essential to a conviction under R.C. 2919.24(A)(1). *State v. Miclau*, 167 Ohio St. 38, 146 N.E.2d 293 (1957), paragraph two of the syllabus (decided under former analogous section). But that proof does not have to be in the form of a formal adjudication of delinquency; rather, delinquency can be shown through the evidence presented at trial. *State ex rel. Meng v. Todaro*, 161 Ohio St. 348, 350, 119 N.E.2d 281 (1954) (decided under former analogous section); *In re Hamblin*, 12th Dist. Butler No. CA2013-04-061, 2014-Ohio-3289, ¶ 18. "Delinquent behavior encompasses possession of intoxicating liquor on the part of a

9.

minor." *State v. Hopkins*, 6th Dist. Williams No. WMS-84-3, 1984 Ohio App. LEXIS 9220, 5 (Apr. 27, 1984).

{¶ 23} The delinquent act in this case is underage possession of alcohol. R.C. 4301.69(E)(1) ("No underage person shall knowingly * * * possess * * * any beer or intoxicating liquor in any public or private place."); R.C. 2925.01(K) ("'[P]ossession' means having control over a thing or substance * * *.") The state did not elicit testimony or present other evidence that either J.W. or A.M.C. was formally adjudicated delinquent. But both girls are under the age of 21, both admitted to stealing the liquor from Howard's house and putting it in A.M.C.'s trunk, and Officer Walker found the bottles in A.M.C.'s car. This is sufficient to show beyond a reasonable doubt that the girls unlawfully possessed alcohol and are delinquent children.

{¶ 24} Regarding her role in J.W.'s and A.M.C.'s delinquency, Howard correctly argues that there must be some link between her conduct and a child's subsequent delinquency. But we disagree with her conclusion that the state failed to make that connection. The state presented evidence that: Howard planned a party for J.W. and A.M.C. where the girls would be allowed to drink alcohol; J.W. and A.M.C. chose the alcohol Howard purchased; J.W. gave her mother some—but not all—of the money that J.W. received from her father; Howard left the liquor bottles in the garage; and the girls stole the liquor while under Howard's supervision. Howard and J.W. testified that Howard never planned a party and that the girls had no part in picking out the liquor, but the trial court found Miller's and A.M.C.'s testimony that Howard planned the party and

10.

A.M.C.'s testimony that the girls chose the liquor to be more credible. The evidence in the record shows that Howard either caused (i.e., by giving the girls permission to drink at her home after the homecoming dance, allowing them to help choose the alcohol, and purchasing the alcohol with money that J.W. provided, all of which led to their possession of alcohol) or contributed to (i.e., by helping the girls obtain the alcohol they possessed when she purchased the liquor at Rite-Aid with money that J.W. provided) the girls' delinquent possession of alcohol. *Kent*, 5th Dist. Stark No. 2000CA0167, 2001 Ohio App. LEXIS 432; *Ellis*, 64 Ohio App.3d 158, 580 N.E.2d 1112.

{¶ 25} Howard seems to argue that the girls' act of stealing the liquor from the garage relieves her of culpability for helping the girls to obtain the liquor found in A.M.C.'s trunk, thus making her actions—at worst—a violation of former R.C. 2919.24(A)(2) (which prohibits acting in a way tending to cause a child to become delinquent). [2] Howard's argument ignores the fact that J.W.'s and A.M.C.'s delinquent possession of alcohol would not have occurred without Howard's assistance. Further, Howard provides no authority—and we found none—supporting her theory that the girls' intervening delinquent act of stealing the liquor relieves her of responsibility for the girls' possession of the liquor. The statute does not require Howard to put the liquor bottles in

---

[2] The distinction between the two sections is that proof of delinquency is required for a conviction under R.C. 2919.24(A)(1), but such proof is not required for a conviction under R.C. 2919.24(A)(2). *State v. Andriola*, 70 Ohio App.3d 69, 71, 590 N.E.2d 403 (1st Dist.1990), citing *State v. Gans*, 168 Ohio St. 174, 151 N.E.2d 709 (1958) (decided under former analogous section) and *Miclau*, 167 Ohio St. 38, 146 N.E.2d 293.

11.

the girls' hands immediately before they are caught; it is enough that Howard's actions were the impetus for the girls' possession.

{¶ 26} We further disagree with Howard's argument that upholding her conviction will lead to an "abomination of justice" by creating "foreseeable criminal liability." Howard misinterprets the trial court's decision. The court found that Howard was *directly* involved in J.W. and A.M.C. becoming delinquent children by possessing alcohol because Howard planned a party in her home where the girls would be allowed to drink (even though the party and drinking never happened), allowed the girls to choose the types of liquor they wanted, and purchased the liquor for the girls' party. The trial court found particularly damning Miller's testimony that all four participants went to Rite-Aid to "get alcohol for the girls" and that Howard asked Miller to take the blame for the girls having the alcohol. This is not a finding of guilt based on some projected future occurrence of delinquency (i.e., the girls actually consuming alcohol in Howard's house), but a finding based on Howard's actions two days before the girls were caught possessing alcohol. If the facts of this case were different—if, for example, the girls simply stole liquor kept in Howard's home, without evidence that Howard planned a party and that the girls were involved in the liquor selection—we would be hard pressed to find that Howard violated R.C. 2919.24(A)(1). As it is, however, the evidence supports the trial court's finding that Howard was directly involved in J.W. and A.M.C. possessing alcohol. We also note that Howard does not present any evidence to support her

12.

contention that the trial court found her guilty based on its assessment of her overall parenting skills, rather than her actions on October 13, 2016.

{¶ 27} Therefore, viewing the evidence in the light most favorable to the state, we find that Howard's conviction is supported by sufficient evidence. Accordingly, Howard's first assignment of error is not well-taken.

## B. Manifest Weight of the Evidence

{¶ 28} In her second assignment of error, Howard contends that her convictions are against the manifest weight of the evidence. She disputes the witnesses' credibility, claiming that the trial judge was biased against her, leading the court to "adopt facts premised upon the source of the testimony rather than its evidentiary value." She also contends that she did not violate R.C. 2919.24(A)(1) because J.W. and A.M.C. are not delinquent children. The state counters that the trial court's evaluation of the witnesses' credibility was reasonable, and that this court must give the trial court's determinations special deference.

{¶ 29} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We do not view the evidence in a light most favorable to the state. Instead, we scrutinize the factfinder's resolution of the conflicting testimony.

13.

*State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 387. A conviction is not against the manifest weight of the evidence simply because the factfinder believed the state's testimony over the defendant's testimony. *State v. Ellison*, 6th Dist. Lucas No. L-02-1292, 2003-Ohio-6748, ¶ 19. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Although under a manifest weight standard we consider the credibility of witnesses, we extend special deference to the finder of fact's credibility determinations given that it is the finder of fact that has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 30} Howard's main argument is that her conviction is against the manifest weight of the evidence because the trial court wrongly assessed the witnesses' credibility. Even though we consider credibility in a manifest weight analysis, we give special deference to the trial court because the trial court saw the testimony firsthand. *Fell* at ¶ 14. Although Miller and A.M.C. presented versions of the events that conflicted in some ways with the versions presented by Howard and J.W., we cannot find that the trial court lost its way in believing Miller and A.M.C. Howard contends that the trial court should have resolved the conflicting stories in her favor. But conflicting evidence,

14.

without more, does not show that a conviction is against the manifest weight of the evidence. *Ellison* at ¶ 19.

{¶ 31} Howard complains in her brief that Miller committed the same crime as Howard, but was not prosecuted. This argument has no bearing on Howard's conviction, however, because the state—not the trial court—chooses who to prosecute. Insofar as Howard is arguing that the trial court improperly considered the state's charging decisions in assessing Howard's and Miller's characters, we find that this argument is not supported by the record.

{¶ 32} In addition to disputing the trial court's credibility determinations, Howard contends that her conviction is against the manifest weight of the evidence because there is no evidence that J.W. and A.M.C. are delinquent children. She claims that neither J.W. nor A.M.C. engaged in any illegal activity by choosing liquor at Rite-Aid because both girls were accompanied by their mothers, which takes their behavior at the store outside of the scope of R.C. 4301.69(E). Likewise, she claims that the planned party was only for J.W. and A.M.C., who would have legally consumed alcohol under their mothers' supervision.

{¶ 33} As discussed above, the state need not present evidence of a formal delinquency adjudication to prove a violation of R.C. 2919.24(A)(1), but it must present some evidence that a child is delinquent. *Meng*, 161 Ohio St. at 350, 119 N.E.2d 281; *Miclau*, 167 Ohio St. 38, 146 N.E.2d 293, at paragraph two of the syllabus. Howard's argument again ignores the evidence showing that J.W. and A.M.C. possessed the liquor

15.

outside of their mothers' supervision, and that they could not have done so without Howard's assistance.

{¶ 34} Considering the testimony and evidence, giving special deference to the trial court's determinations of credibility, we cannot find that the court lost its way and created a manifest miscarriage of justice by convicting Howard. This is not an exceptional case in which the evidence weighs heavily against the conviction. For these reasons, Howard's second assignment of error is not well-taken.

## IV. Conclusion

{¶ 35} The June 16, 2017 judgment of the Fulton County Court of Common Pleas, Juvenile Division, is affirmed. Howard is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

James D. Jensen, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE