[Cite as *State v. Davis*, 2023-Ohio-970.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo

    Appellee

v.

Cleeatta Yolanda Davis

    Appellant

Court of Appeals No.  L-22-1201

Trial Court No.  CRB-22-05761

**DECISION AND JUDGMENT**

Decided:  March 24, 2023

* * * * *

Rebecca Facey, City of Toledo Chief Prosecuting Attorney, and
Jimmie Lee Jones, Assistant Prosecuting Attorney, for appellee.

Tyler Naud Jechura, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** Following a bench trial, the defendant-appellant, Cleeatta Yolanda Davis, was convicted of menacing, a fourth-degree misdemeanor by the Toledo Municipal Court.  On appeal, Davis alleges that her conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.  For the reasons set forth below, we affirm the lower court judgment.

## I. Background and Facts

{¶ 2} Davis and "K.S.," the victim in this case, live in the same duplex, located on South Avenue in Toledo. K.S. testified that she lives in the upper unit, and Davis lives below her. The two have been neighbors for about nine years and had a "friendly" relationship until April of 2021 when a pipe in K.S.'s unit "burst," causing water damage in Davis's bedroom. Davis became "confront[ational]" with K.S. and "pushed" and "cornered" her, prompting K.S. to call the police. Since the 2021 incident, the two "seldom spoke." When they did speak, Davis "continually" accused K.S. of lying.

{¶ 3} On June 20, 2022, K.S. encountered Davis when she got home. Davis was sitting on her own porch with her niece and volunteered to K.S. that "her son had killed hi[m]self." K.S. expressed her condolences to Davis, then "went in the house" but returned to the porch and "sat back [on her own] side [of the porch]." After K.S. sat down in her "usual[]" seat, Davis began walking "back and forth" between porches, accusing K.S. of "lying and what have you." At trial, no testimony was elicited to explain how or why the women's exchange—which began with a discussion regarding the death of Davis's son—transitioned into an altercation. Nonetheless, according to K.S., Davis approached her and "got * * * close" enough that K.S. "couldn't get up" from her chair. Davis said that "she was going to beat [K.S.'s] so and so and whoop [her] so and so" and calling K.S. a "M.F and so and so." K.S. asked Davis's niece to "call her back over on her side of the residence" because Davis was "right in front of [her] saying

2.

these things," but the niece "just looked." The incident ended when Davis announced that *she* was going to call the police "on [K.S.] this time."

{¶ 4} Although it was Davis who called the authorities, it was she who was arrested and taken into custody. Davis was charged with a single count of menacing, in violation of R.C. 2903.22(A), a misdemeanor of the fourth degree.

{¶ 5} A bench trial was held on August 23, 2022. Following K.S.'s testimony, described above, Davis moved for an acquittal pursuant to Crim.R. 29, which the court denied. Davis then testified in her own defense. Davis told the court that she "called 911 three times" that day but offered no explanation as to why. Davis specifically denied threatening to "beat" or "whoop" K.S.

{¶ 6} The trial court found Davis guilty and convicted her of menacing. It sentenced her to serve 30 days in jail, with 29 days suspended and credit for one day previously served. It also ordered one year of active probation, to continue mental health services and to have no "unwanted contact" with the victim.

{¶ 7} Davis appealed and raises a single assignment of error for our review:

I. The trial court erred when it convicted Ms. Davis because the evidence presented both lacked the sufficiency to support the conviction and the conviction was against the manifest weight of the evidence.

3.

## II. Law and Analysis

{¶ 8} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *Id.*

{¶ 9} Davis was convicted of the offense of menacing under R.C. 2903.22(A), which provides that,

> No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person * * *. In addition to any other basis for the other person's belief that the offender will cause physical harm to the person or property of the other person * * *, the other person's belief may be based on words or conduct of the offender

that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶ 10} On appeal, Davis challenges the sufficiency and weight of the evidence pertaining to whether K.S. *believed* Davis would cause her physical harm. During the trial, the state questioned K.S. about her state of mind during the incident. The following exchange took place:

Q. Did you have the ability to retreat?

A. Well, not—I didn't think she was going to do anything ignore her because she was always making some comment. * * * [SIC].

Q. While you were sitting [on the porch], did you have the ability to leave?

A. I don't know because she was real close.

Q. You just said you didn't believe she was going to do anything to you?

A. Well, she'd talk and swear and this and that and so forth, but you don't know what she's going to do.

Q. * * * [D]id you believe she was going to do anything to you?

A. Yes, she could have after the first incident when she cornered me that time [in 2021].

Q. So, at this particular time on June 20, [2022] did you think she was going to do anything other than to talk to you?

A. No.

Q. So you didn't think she was going to harm you?

A. Oh, yeah, that part.

Q. Okay.

A. Because she could talk to me from way over there, but when you [are] getting in front of me.

Q. [W]hat did you think she was going to do?

A. She could have hit me.

Q. Did you think she was going to hit you?

A. I was praying she wouldn't.

{¶ 11} On appeal, Davis complains that K.S. "repeatedly said" that she did *not* believe Davis would harm her and "only alluded" to feeling fearful *after* she had testified that she was "not worried."

{¶ 12} Davis's argument speaks to the weight, not the sufficiency of the evidence. In a sufficiency analysis, we must view all evidence and reasonable inferences in the light most favorable to the prosecution, and determine whether the trier of fact could have found all the elements of the offense proven beyond a reasonable doubt. Here, K.S. answered "yes," to the direct question of whether she believed Davis "was going to do

6.

anything to you." She added that, if Davis only intended "to talk," she "could have talk[ed] to [K.S.] from way over there [on her own side of the porch], but [by] getting in front of" K.S. and being "so close where [K.S.] couldn't get up" from her chair, it caused K.S. to believe that "[s]he could have hit me."

{¶ 13} We would add that Davis's threat—that she was going to "beat" and "whoop" K.S.—are indisputable references to violence, especially considering that, when Davis made those threats, she was preventing K.S. from being able to retreat. On these facts, we conclude that, viewing the evidence in a light most favorable to the state, a rational trier of fact could have found the essential elements of menacing proven beyond a reasonable doubt. Therefore, we find that sufficient evidence supports Davis's conviction. *Accord State v. Ferguson*, 4th Dist. Jackson No. 04CA13, 2005-Ohio-1438, ¶ 15 (Finding that a rational trier of fact could have found that the defendant knew her threat—to "kick your ass"—would cause the victim to reasonably believe that she intended to cause physical harm).

{¶ 14} Turning to Davis's challenge to the weight of the evidence, when reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. We do not view the evidence in a

7.

light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388, 678 N.E.2d 541. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15} Davis argues that K.S. vacillated as to whether she actually feared that Davis would harm her—and, therefore, the trial court lost its way in determining that K.S. was a credible witness. Although we consider the credibility of witnesses under a manifest-weight-of-the-evidence standard, "we extend special deference to the finder of fact's credibility determinations given that it is the finder of fact that has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor." *State v. Howard*, 6th Dist. Fulton No. F-17-003, 2017-Ohio-8119, ¶ 29, citing *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 16} Here, the trial court "absolutely believed" that Davis made the statements attributed to her, and believed that she did so in an "aggressive" manner while standing "very close" to K.S. Regarding K.S.'s state of mind, it found relevant that K.S. called out for "help" from Davis's niece. K.S. also testified that she viewed Davis as unpredictable, especially considering that Davis had "pushed" and "cornered" her before. On this

8.

record, we cannot say that the trial court lost its way in finding that K.S. believed that Davis would cause her physical harm.

{¶ 17} We therefore conclude that Davis's menacing conviction was supported by the weight of the evidence.

### III. Conclusion

{¶ 18} Drawing all inferences in favor of the state, the state presented sufficient evidence that Davis knowingly caused the victim to believe that she would cause the victim physical harm. Additionally, the trial court, acting as the fact finder, did not lose its way when it found K.S. more credible than Davis. Accordingly, we find Davis's assignment of error not well-taken.

{¶ 19} We affirm the August 23, 2022 judgment of the Toledo Municipal Court. Davis is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                                             _____

                                                                JUDGE

Christine E. Mayle, J.

Charles E. Sulek, J.                                            _____
CONCUR.                                                             JUDGE

                                                                  _____
                                                                  JUDGE

9.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.